Dammeyin A. JOHNSON, Defendant Below, Appellant,

v.

STATE of Delaware, Plaintiff Below, Appellee.

No. 41, 1999.

Supreme Court of Delaware.

Submitted: April 4, 2000.

Decided: June 1, 2000.

---

Raymond M. Radulski, Assistant Public Defender, of Wilmington, Delaware, for appellant.

Timothy J. Donovan, Jr., Department of Justice, of Wilmington, Delaware, for appellee.

Before WALSH, HOLLAND, and HARTNETT, Justices.

HOLLAND, Justice.

Following a jury trial in the Superior Court, the defendant-appellant, Dammeyin A. Johnson, was found guilty of the following offenses: Unlawful Sexual Intercourse in the Second Degree, a lesser-included offense of Count I; Unlawful Imprisonment in the Second Degree, a lesser-included offense of consolidated Counts II and III; Unlawful Sexual Contact in the Third Degree, a lesser-included offense of Count IV; Count V, Assault in the Third Degree; and Counts VI and IX, Aggravated Act of Intimidation. Johnson was found not guilty of Unlawful Sexual Intercourse in the First Degree, Kidnapping in the First Degree, and Felony Theft.[1] Johnson was sentenced to ten years at Level V for Unlawful Sexual Intercourse in the Second Degree; two years at Level V for Aggravated Act of Intimidation; two years at Level V, suspended for one year at Level IV, for Aggravated Act of Intimidation; two years at Level V, suspended for two years at Level III, for Unlawful Sexual Contact in the Third Degree; one year at Level V, suspended for one year at Level II, for Assault in the Third Degree; and one year at Level V, suspended for one year at Level II, for Unlawful Imprisonment in the Second Degree.

---

1. Johnson was indicted by a Grand Jury for the following criminal offenses: one count of Unlawful Sexual Intercourse in the First Degree, two counts of Kidnapping in the First Degree, one count of Unlawful Sexual Penetration in the Third Degree, two counts of Assault in the Third Degree, two counts of Aggravated Act of Intimidation and one count of Felony Theft.

In response to defense motions made during trial, the two counts of Kidnapping in the First Degree were consolidated. The Superior Court entered a judgment of acquittal on the count of Unlawful Sexual Penetration in the Third Degree, but submitted that count to the jury as the lesser-included offense of Unlawful Sexual Contact in the Third Degree. The Superior Court dismissed one count of Assault in the Third Degree.

Johnson has raised two arguments in this direct appeal. First, he contends that the Superior Court erred in refusing to grant his motion for a missing evidence instruction[2] relating to the complainant's refusal to submit to a medical examination following the alleged forcible sexual intercourse. Second, he contends that the Superior Court erred in failing to grant his motion for a new trial on the conviction for Unlawful Sexual Intercourse in the Second Degree on the grounds that the jury's verdict was inconsistent.

### Facts

The record reflects that on the afternoon of September 5, 1998, nineteen year-old Andrea Collins,[3] went to the Christiana Mall with some friends. They were all arrested at the mall for breaking into cars in the parking lot. Collins was also arrested on an outstanding Family Court warrant. While being transported by the State Police to Wilmington, Collins advised the officer that she had been raped earlier that day by Johnson. An investigation of the alleged rape was initiated by the Wilmington Police Department.

According to Collins, on the evening of September 4, 1998, she and a friend took Johnson's car without his permission and went to the Christiana Mall. When she returned from the mall at approximately 10:30 p.m., she was confronted by Johnson who wanted to know the whereabouts of his vehicle. According to Collins, Johnson grabbed her by the hair and commenced a "forced march" through the City of Wilmington to look for his car. Initially, they went to the vicinity of Broom and Linden Streets, then to the Thriftway at Adams Four and ultimately to Johnson's house on Madison Street, where he lived with his sister and mother.

According to Collins, Johnson's mother and sister were seated on the living room couch when she and Johnson arrived at his Madison Street home. Collins stated that she and Johnson went straight upstairs to Johnson's bedroom. Collins testified that Johnson then beat her and raped her into the early morning hours of the next day.

Collins testified that, after Johnson fell asleep, she dressed and left without her shoes. She returned to a residence where she was staying. There, she told a friend about being raped by Johnson. Collins stated that she accompanied her friend to a telephone to call in an anonymous complaint. Collins' reluctance to file a formal complaint at that time was apparently attributed to the fact that she was wanted by the Family Court on assault charges for a stabbing incident involving one of Johnson's cousins.

Collins testified that she and seventeen-year-old Johnson had not previously engaged in sexual intercourse. She acknowledged, however, that she spent several nights in Johnson's room with him, in his bed, during the preceding months. During the investigation by the Wilmington Police Department, Collins repeatedly refused the advice of the investigating police officer, her mother and the staff at the Porter Center to have a sexual assault medical examination performed at the Christiana Hospital.

At trial, Johnson denied forcing Collins to accompany him to look for his car or forcing her to have sexual intercourse with him. He did admit hitting Collins during an argument. According to Johnson, that occurred after he became aware of the criminal charges filed against him as a result of Collins' complaint to the Wilmington Police Department.

### Missing Evidence Instruction

The first issue on appeal is the Superior Court's denial of Johnson's motion for a missing evidence instruction to the jury.[4]

---

**2.** See Deberry v. State, Del.Supr., 457 A.2d 744, 754 (1983).

**3.** This is a pseudonym. See Supr. Ct. R. 7(d).

**4.** See, e.g., Deberry v. State, Del.Supr., 457 A.2d 744, 754 (1983); Harris v. State, Del. Supr., 695 A.2d 34, 40 (1997); Lolly v. State, Del.Supr., 611 A.2d 956, 960 (1992); Ham-

Johnson contends that Collins' failure to have a sexual assault medical examination and the police officer's failure to force her to submit to such an examination required the Superior Court to instruct the jury that he was entitled to "an inference that if such evidence were available at trial it would be exculpatory."[5] The Superior Court denied Johnson's motion on the basis that the government played no role in Collins' failure to have a medical examination.

In *Deberry*, the question presented was "what relief is appropriate when the State had or should have had the requested evidence, but the evidence does not exist when the defense seeks its production?"[6] In answering that inquiry, we held that claims of this type must be examined according to the following paradigm:

1) would the requested material, if extant in the possession of the State at the time of the defense request, have been subject to disclosure under Criminal Rule 16 or *Brady?*

2) if so, did the government have a duty to preserve the material?

3) if there was a duty to preserve, was the duty breached, and what consequences should flow from a breach?[7]

The consequences that should flow from a breach of the duty to preserve evidence are determined in accordance with a separate three-part analysis that considers:

1) the degree of negligence or bad faith involved,

2) the importance of the missing evidence considering the probative value

and reliability of secondary or substitute evidence that remains available,[8] and

3) the sufficiency of the other evidence produced at the trial to sustain the conviction.[9]

In *Deberry*, we concluded "[a] claim that *potentially* exculpatory evidence was lost or destroyed by the State can only be decided after each element of the above analysis has been considered."[10] In *Deberry*, we also noted, for future guidance, the "agencies that create rules for evidence preservation should broadly define discoverable evidence to include any material that *could* be favorable to the defendant."[11]

■ The State's obligation "to preserve evidence is rooted in the due process provisions of the fourteenth amendment to the United States Constitution and the Delaware Constitution, article I, § 7."[12] *Deberry* was decided in a context where the State had actual possession of evidence that was subsequently determined to be lost or destroyed. This Court subsequently extended that holding to defense claims that the police had failed to gather evidence *ab initio.*[13]

The health and welfare of an alleged crime victim are the paramount reasons that police officers encourage prompt medical treatment. To the extent that physical evidence can be gathered during the course of a medical examination following a sexual assault, it is frequently instrumental in apprehending and convicting the perpetrator. It is customary for the investigating police officer to advise complain-

---

*mond v. State*, Del.Supr., 569 A.2d 81, 90 (1989).

5. *Lolly v. State*, 611 A.2d at 962 n. 6 (1992).

6. *Deberry v. State*, 457 A.2d at 749.

7. *Id.* at 750 (citations omitted).

8. The consideration of secondary or substituted evidence was added by this Court in *Bailey v. State*, Del.Supr., 521 A.2d 1069, 1091 (1987).

9. *Bailey v. State*, 521 A.2d at 1091 (citing *Deberry v. State*, 457 A.2d at 752). *Accord Hammond v. State*, Del.Supr., 569 A.2d 81, 86 (1989).

10. *Deberry v. State*, 457 A.2d at 750 (emphasis added).

11. *Id.* at 752 (emphasis added).

12. *Id.*

13. *See Lolly v. State*, 611 A.2d at 960.

ants, as Collins was advised, about both of these purposes for having a medical examination.

■ The United States Supreme Court has held that competent adults have a constitutionally protected liberty interest in refusing unwanted medical treatment.[14] The government cannot require an adult, who claims to have been raped, to undergo a medical examination against his or her will. Accordingly, if a competent adult refuses to be physically examined or medically treated, the government has no duty to forcibly gather that type of evidence.

■ Johnson's request for a missing evidence instruction to the jury was properly denied. The record in this case reflects that no government agent played a role in Collins' failure to seek medical attention. In fact, Collins was repeatedly urged by the investigating police officer and others to seek medical attention following the alleged sexual assault. The Superior Court permitted Johnson to present Collins' refusal to have a medical examination to the jury and to be argued by the defense in summation as having exculpatory value for Johnson.

### Verdicts Consistent

■ The next issue raised by Johnson on appeal relates to the Superior Court's decision to deny his motion for a new trial on the conviction of Unlawful Sexual Intercourse in the Second Degree.[15] Johnson was charged with Unlawful Sexual Intercourse in the First Degree and Kidnapping in the First Degree.[16] The kidnapping count alleged that Johnson unlawfully restrained Collins for the purpose of sexually

assaulting her.[17] Johnson was convicted of the lesser-included offense of Unlawful Imprisonment in the Second Degree.[18] This required the jury to find that Johnson knowingly and unlawfully restrained Collins without having to decide the purpose of that restraint.

In his motion for a new trial on the Unlawful Sexual Intercourse charge, Johnson argued that, by acquitting him of the charged offense of Kidnapping in the First Degree, the jury necessarily rejected the State's contention that Johnson had restrained Collins for the purpose of sexually assaulting her. This, Johnson argued, was inconsistent with the verdict convicting him of the lesser-included sexual assault offense of Unlawful Sexual Intercourse in the Second Degree.

The testimony at trial reflects that Johnson initially forced Collins to accompany him to locate his car.[19] Accordingly, there was a rational evidentiary basis for the jury to reject the State's contention that Johnson initially kidnapped Collins for the purpose of sexually assaulting her. The jury could have reasonably concluded from the evidence that Johnson subsequently decided to sexually assault Collins, when he arrived with her at his home, after he had already restrained her to look for his car. The Superior Court properly held that there was no verdict inconsistency.

### Conclusion

The judgments of the Superior Court are affirmed.

**14.** See Cruzan v. Missouri Dept. of Health, 497 U.S. 261, 278, 110 S.Ct. 2841, 111 L.Ed.2d 224 (1990); Vitek v. Jones, 445 U.S. 480, 497, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980); Parham v. J.R., 442 U.S. 584, 600, 99 S.Ct. 2493, 61 L.Ed.2d 101 (1979).

**15.** 11 Del. C. § 774(2), repealed by 71 Del. Laws, c. 285, § 12, eff. Sept. 9, 1998, codified as 11 Del. C. § 772.

**16.** 11 Del. C. § 775(a)(2), repealed by 71 Del. Laws, c. 285, § 13, eff. Sept. 9, 1998, codified as 11 Del. C. § 773.

**17.** 11 Del. C. § 783A(4).

**18.** 11 Del. C. § 781.

**19.** See Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Weber v. State, Del.Supr., 547 A.2d 948, 957–59 (1988).