**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| **STATE OF DELAWARE** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **ID No. 1110014096** |
| | ) | |
| **IZZY WHITEHURST** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| | ) | |
| | ) | |

**OPINION**

**Submitted:** December 16, 2015
**Decided:** March 31, 2016

*Upon Defendant's Motion to Oppose,* **DENIED**.
*Upon Defendant's Motion for Postconviction Relief,* **DENIED**.
*Upon Conflict Counsel's Motion to Withdraw*, **GRANTED.**

Joseph Grubb, Esquire, Deputy Attorney General, Department of Justice, Carvel State Building, 820 North French Street, 7th Floor, Wilmington, Delaware 19801

Izzy Whitehurst, *pro se*, SBI No. 185152, James T. Vaughn Correctional Center, 1181 Paddock Road, Smyrna, Delaware 19977

**BRADY, J.**

## I. INTRODUCTION AND PROCEDURAL HISTORY

Before the Court is a Motion for Postconviction Relief filed pursuant to Superior Court Criminal Rule 61 ("Rule 61") by Izzy Whitehurst ("Defendant") on April 14, 2014.[1] On December 19, 2011, Defendant was indicted on one count of Attempted Murder in the First Degree, three counts of Possession of a Firearm During the Commission of a Felony ("PFDCF"), one count of Robbery in the First Degree, one count of Burglary in the First Degree, one count of Conspiracy in the Second Degree, one count of Possession of a Deadly Weapon by a Person Prohibited ("PDWBPP"), and three counts of Tamping with a Witness.[2] On July 9, 2012, Defendant filed a Motion for a Missing Evidence Instruction,[3] which was denied by the Court on August 24, 2012.[4]

On October 16 through October 26, 2012, a seven day jury trial was held.[5] During the first day of trial, the State entered a *nolle prosequi* on the charge of PDWBPP.[6] The jury found Defendant guilty of Assault in the First Degree, Robbery in the First Degree, Burglary in the First Degree, Conspiracy in the Second Degree, three counts of PFDCF, and three counts of Tampering with a Witness.[7] On March 15, 2013, Defendant was sentenced to 42 years at level V, suspended after 33 years and six months.[8]

On April 14, 2013, Defendant appealed his conviction to the Delaware Supreme Court.[9] In his appeal, Defendant argued that the trial court erred in denying his Motion to Suppress his

---

[1] Def.'s Mot. for Postconviction Relief, *State v. Whitehurst*, No. 1110014096, Docket No. 134 (April 14, 2014).
[2] Indictment, *State v. Whitehurst*, No. 1110014096, Docket No. 8 (Dec. 19, 2011).
[3] Def.'s Motion for Missing Evidence Instruction, *State v. Whitehurst*, No. 1110014096, Docket No. 25 (July 9, 2012).
[4] Order, *State v. Whitehurst*, No. 1110014096, Docket No. 47 (Aug. 24, 2012).
[5] *See* Jury trial, *State v. Whitehurst*, No. 1110014096, Docket No. 103 (Oct. 26, 2012).
[6] *See* Jury trial, *State v. Whitehurst*, No. 1110014096, Docket No. 103 (Oct. 26, 2012).
[7] *See* Jury trial, *State v. Whitehurst*, No. 1110014096, Docket No. 103 (Oct. 26, 2012).
[8] Sentence, *State v. Whitehurst*, No. 1110014096, Docket No. 112 (Mar. 15, 2013).
[9] *See* Letter from Supreme Court, *State v. Whitehurst*, No. 1110014096, Docket No. 115 (April 16, 2013).

prison telephone calls because the State lacked a legal basis to collect them.[10] Defendant further argued that the admission of the prison telephone calls improperly tainted his trial.[11] On December 20, 2013, the Delaware Supreme Court affirmed Defendant's conviction holding that Defendant's Fourth Amendment right to privacy was not violated when the State subpoenaed Defendant's prison phone recordings and that Defendant's First Amendment rights were not violated because the State's activity furthered an important governmental interest and was no greater than necessary to protect that governmental interest.[12]

On April 14, 2014, Defendant filed the instant Motion for Postconviction Relief[13] and Defendant was appointed counsel on July 3, 2014.[14] On December 19, 2014, conflict counsel filed a Motion to Withdraw as Counsel.[15] On June 29, 2015, the Court entered a Scheduling Order which directed the State to file a response to conflict counsel's Motion to Withdraw and the merits of Defendant's claims by August 7, 2015.[16] On October 16, 2015, having not received any response from the State, the Court granted the State an extension to file a response by November 7, 2015.[17] On November 2, 2015, Defendant filed a Motion to Oppose the State's response[18] and on November 10, 2015, the State filed a response.[19] On December 7, 2016, the Court received Defendant's final response[20] and on December 16, 2015, the Court informed the parties that the matter was taken under advisement.[21]

---

[10] *Whitehurst v. State*, 83 A.3d 362, 363 (Del. 2013)
[11] *Id.*
[12] *Id.* at 367-68.
[13] Def.'s Mot. for Postconviction Relief, *State v. Whitehurst*, No. 1110014096, Docket No. 134 (April 14, 2014).
[14] Letter, *State v. Whitehurst*, No. 1110014096, Docket No. 137 (July 3, 2014).
[15] Motion to Withdraw as Counsel, *State v. Whitehurst*, No. 1110014096, Docket No. 146 (Dec. 19, 2014).
[16] Letter, *State v. Whitehurst*, No. 1110014096, Docket No. 149 (June 29, 2015).
[17] Letter, *State v. Whitehurst*, No. 1110014096, Docket No. 150 (Oct. 16, 2015).
[18] Def.'s Mot. to Oppose, *State v. Whitehurst*, No. 1110014096, Docket No. 151 (Nov. 2, 2015).
[19] State's Response, *State v. Whitehurst*, No. 1110014096, Docket No. 152 (Nov. 10, 2015).
[20] Letter, *State v. Whitehurst*, No. 1110014096, Docket No. 154 (Dec. 7, 2015).
[21] Letter, *State v. Whitehurst*, No. 1110014096, Docket No. 155 (Dec. 16, 2015).

For the reasons discussed below, Defendant's Motion to Oppose is **DENIED**, Defendant's Motion for Postconviction Relief is **DENIED**, and Conflict Counsel's Motion to Withdraw is **GRANTED**.

## II. FACTS[22]

### A. The Incident

On October 19, 2011, Erogers Bey ("Bey") pulled into the parking lot of the Budget Inn, located in New Castle County, Delaware. Individuals at the Budget Inn noticed that Bey was intoxicated, waiving around a lot of cash, and generally attracting attention. Jessica "Bella" Harvey, ("Harvey") who lived in room 109 ("Harvey's room") and worked as a prostitute, noticed Bey, and, along with Tasha "China" Mahaley ("Mahaley"), spoke to him at his car. Both wanted to "date" Bey.

Mahaley was Defendant's girlfriend and mother of his child. Defendant and Mahaley approached Defendant's friend, Tyrone "Uncle Butters" Brown ("Brown"), and asked him if he had a gun because Defendant was "going to knock off the joker around the corner." Brown told Defendant he did not have a gun and went back to his room. Defendant subsequently approached Chris White ("White") and told him that they should "get" or rob Bey, but White refused.

The Budget Inn had surveillance videos of some of the events of the night in question. These videos showed that Mahaley left room 211, which she shared with Defendant and their child, and went downstairs into Harvey's room. An unknown black male, apparently a drug dealer, then left Harvey's room and walked towards Memorial Drive and met another person. The unknown black male left the area but Mahaley and the other individual, a black male with

---

[22] Unless otherwise noted, the following facts are taken from the Opinion of the Delaware Supreme Court. *See Whitehurst*, 83 A.3d 362.

dreadlocks, walked back towards Harvey's room. Mahaley then went back to room 211, while the black male with dreadlocks stood outside Harvey's room. A moment later, Defendant, wearing a black hooded sweatshirt, exited room 211, walked down the steps and met with the black male with dreadlocks outside room 109. They lined up in a tactical formation along the wall with Defendant behind the other man, who was holding a gun. They entered the room and after a short time thereafter both exited.

Harvey testified that when Bey and her entered room 109 the only person there was Mahaley and that Bey gave Mahaley twenty or thirty dollars to leave the room.[23] In response to a knock on the door, Harvey opened the door and Defendant pushed his way into the room. A gun barrel prevented Harvey from closing the door. Another resident, Deborah Pyle, who was sitting on the steps outside Harvey's room, heard a gunshot from within Harvey's room a minute or so before seeing Defendant and the other man run out of the room.

As soon as Harvey saw the man with the gun, she barricaded herself in the room's bathroom. She heard a commotion, including Bey "asking for whatever was happening to stop." She also heard Bey say, "Izzy, why are you doing this?" When the noise stopped for a moment, Harvey opened the door a crack and peeked out. She saw Defendant on top of Bey and the man with the gun beating Bey's head with the gun butt. Defendant was "running Bey's pockets," apparently taking Bey's cell phone and car keys. Harvey closed the door again. Later, Harvey came out of the bathroom and saw Bey, covered in blood, rolling around the floor mumbling incoherently. She left to tell Mahaley what had happened. Mahaley grabbed her cell phone and left the Budget Inn.

---

[23] Transcript of trial testimony of Harvey, *State v. Whitehurst*, No. 1110014096, Docket No.124, at *26-27 (Oct. 23, 2012).

Bey, who no longer had his cell phone and keys, went to the Budget Inn's office to call friends to get him. Bey then saw Harvey running in the parking lot of the Budget Inn and ran after her. Harvey made her way to the Budget Inn's office, and another resident of the Budget Inn prevented Bey from entering the office after Harvey.

The Budget Inn clerk called the police. When the police arrived, they questioned Harvey, who said she did not know who had been chasing her in the parking lot, and that the individual was gone. Officers looked at the Budget Inn's surveillance video which showed Harvey in the lobby and White blocking Bey from entering after her. No one reported any shots fired or injuries to anyone to the police at that time.

Officer Michael Rief ("Officer Rief"), a patrol officer assigned to the area of the Budget Inn, returned on routine patrol about an hour after being sent to respond to the Budget Inn clerk's call. He noticed White in the parking lot and stopped to talk to him about the incident. While the two were talking, Bey came around the corner and said, "I've been robbed." Officer Rief asked Bey to wait until he finished his conversation with White. Bey said it did not matter and walked away. White then advised to Officer Rief that Bey was the man he was trying to keep out of the Budget Inn's lobby.

Bey was eventually taken to the Christiana Hospital emergency room by two women around 1 a.m. Linda Ramsey ("Ramsey"), a forensic nurse, was on duty. Through her training, Ramsey was able to identify that Bey's head had both a gunshot entry wound and exit wound. Bey also had other wounds to his hand and elbow.

Office Brian Crisman ("Officer Crisman") spoke with Bey around 5 a.m. Bey mumbled that he had driven to a motel across from the Travel Lodge and had been "jumped" by two black

6

men who took $600 in cash, a cell phone, and the keys to his vehicle. Bey also told Officer Crisman that one of the men was the Defendant.

Detective Anthony Tenebruso ("Detective Tenebruso") was the first officer to arrive at the Budget Inn to investigate the robbery. Other officers arrived within the next hour. Detective Lano photographed the crime scene in Harvey's room and collected a black coat found in a trash can outside of the room as well as samples of bloodstains on the carpet and on the tile floor outside the bathroom in Harvey's room. The police were not able to recover any drugs, guns, bullets, or shell casings from the room. Numerous people had been through the room before the police arrived.

After the police obtained search warrants, Detective Lano returned to the Budget Inn and took photographs of rooms 211 and 216. He also collected a black sweatshirt from room 211, which contained bloodstains that belonged to Bey. Skin cells collected from the interior of the cuffs of the same sweatshirt contained Defendant's DNA, and Defendant subsequently admitted that the sweatshirt was his. Bey's blood was determined to be on the carpet in Harvey's room.

Defendant testified at trial that he was staying at the Budget Inn in room 211 during the night in question.[24] Defendant testified that he left his room and went down to room 109.[25] Defendant testified that while he was in room 109 Harvey and Bey came into the room, Harvey informed Defendant that he had to leave the room, and that she would give Defendant drugs for leaving when her drug dealer arrived.[26] Defendant then went up to his room.[27]

---

[24] Transcript of trial testimony of Defendant, *State v. Whitehurst*, No. 1110014096, Docket No.126, at *139-40 (Oct. 25, 2012).

[25] Transcript of trial testimony of Defendant, *State v. Whitehurst*, No. 1110014096, Docket No.126, at *142 (Oct. 25, 2012).

[26] Transcript of trial testimony of Defendant, *State v. Whitehurst*, No. 1110014096, Docket No.126, at *144 (Oct. 25, 2012).

[27] Transcript of trial testimony of Defendant, *State v. Whitehurst*, No. 1110014096, Docket No.126, at *144-45 (Oct. 25, 2012).

Defendant testified that when he got to his room, Mahaley was there waiting for Harvey's drug dealer.[28] According to Defendant, Harvey had promised him drugs if he left the room and Mahaley told him that when Harvey's drug dealer arrived she would go to room 109.[29] Defendant testified that when Harvey's drug dealer arrived, Mahaley went down to room 109 and returned to room 211, but had forgotten to ask for Defendant's drugs.[30] Defendant said he then left room 211 and went down to room 109.[31] Defendant testified that before he got to room 109, he was confronted by an unidentified black male with dreadlocks who was holding a gun.[32] Defendant said he asked the individual if he was there to harm him and the unidentified black male said he was not.[33]

Defendant testified that he knocked on the door of room 109 and Harvey opened it and let Defendant in.[34] Defendant testified that he began to talk to Harvey when all of a sudden the unidentified black male with the gun entered the room, hit Bey twice with the gun knocking Bey unconscious, and then went through Bey's pockets and took his money.[35] Defendant testified that during this incident Harvey jumped on the bed and remained there.[36] Defendant further

---

[28] Transcript of trial testimony of Defendant, *State v. Whitehurst*, No. 1110014096, Docket No.126, at *145-46 (Oct. 25, 2012).

[29] Transcript of trial testimony of Defendant, *State v. Whitehurst*, No. 1110014096, Docket No.126, at *145-46 (Oct. 25, 2012).

[30] Transcript of trial testimony of Defendant, *State v. Whitehurst*, No. 1110014096, Docket No.126, at *145-48 (Oct. 25, 2012).

[31] Transcript of trial testimony of Defendant, *State v. Whitehurst*, No. 1110014096, Docket No.126, at *148 (Oct. 25, 2012).

[32] Transcript of trial testimony of Defendant, *State v. Whitehurst*, No. 1110014096, Docket No.126, at *149 (Oct. 25, 2012).

[33] Transcript of trial testimony of Defendant, *State v. Whitehurst*, No. 1110014096, Docket No.126, at *149 (Oct. 25, 2012).

[34] Transcript of trial testimony of Defendant, *State v. Whitehurst*, No. 1110014096, Docket No.126, at *149 (Oct. 25, 2012).

[35] Transcript of trial testimony of Defendant, *State v. Whitehurst*, No. 1110014096, Docket No.126, at *152-53 (Oct. 25, 2012).

[36] Transcript of trial testimony of Defendant, *State v. Whitehurst*, No. 1110014096, Docket No.126, at *152 (Oct. 25, 2012).

testified that the unidentified black male shortly thereafter left the room and that Defendant left seconds later.[37]

## B. The Missing Surveillance Camera Footage

The Budget Inn had a video surveillance system that captured activity outside of the room where the shooting occurred. Detective Brown testified that he responded to the Budget Inn following the shooting and, along with other officers, reviewed the video footage. Detective Brown personally attempted to download the surveillance video to a Universal Serial Bus ("USB") drive.[38] Detective Brown stated that "after a substantial amount of time" the download appeared to be complete.[39] Detective Brown then testified that he called the video surveillance installer to determine how long the surveillance camera footage would be stored on the Budget Inn's system before deletion.[40] The installer informed Detective Brown that it would be deleted after thirty days from the date of the incident.[41] When Detective Brown returned to Troop 2 and attempted to play the downloaded files, he received an error message and was unable to play any of the files.[42] Detective Brown, nine days after the incident, on October 28, 2011, returned to the Budget Inn in order to again try to download the video files.[43] Even though Detective Brown

---

[37] Transcript of trial testimony of Defendant, *State v. Whitehurst*, No. 1110014096, Docket No.126, at *154 (Oct. 25, 2012).

[38] Transcript of trial testimony of Detective Brown, *State v. Whitehurst*, No. 1110014096, Docket No.108, at *26-30 (Oct. 16-17, 2012).

[39] Transcript of trial testimony of Detective Brown, *State v. Whitehurst*, No. 1110014096, Docket No.108, at *26-30 (Oct. 16-17, 2012).

[40] Transcript of trial testimony of Detective Brown, *State v. Whitehurst*, No. 1110014096, Docket No.108, at *26-30 (Oct. 16-17, 2012).

[41] Transcript of trial testimony of Detective Brown, *State v. Whitehurst*, No. 1110014096, Docket No.108, at *26-30 (Oct. 16-17, 2012).

[42] Transcript of trial testimony of Detective Brown, *State v. Whitehurst*, No. 1110014096, Docket No.108, at *26-30 (Oct. 16-17, 2012).

[43] Transcript of trial testimony of Detective Brown, *State v. Whitehurst*, No. 1110014096, Docket No.108, at *26-30 (Oct. 16-17, 2012).

9

returned before the expiration of thirty days, the video files had been erased.[44] This video was, therefore, not available for trial.

On July 9, 2012, Defendant filed a Motion for a Missing Evidence Instruction.[45] Defendant argued that a missing evidence instruction was warranted because law enforcement failed to preserve the digital material and negligently entrusted their obligation to obtain evidence in the case to the staff of the Budget Inn.[46] Defendant argued that the video contained exculpatory evidence and therefore it would be subject to production pursuant to Superior Court Rule of Criminal Procedure 16 and *Maryland v. Brady*.[47] The Court denied Defendant's Motion holding that the State had no duty to preserve the video because it was never in the possession of the State, there was no evidence of negligence or bad faith with respect to the police officers' investigation, and the police officers' reliance on the representations made by the Budget Inn employee and DVR installer was not unreasonable.[48]

At trial, the State presented the testimony of several Delaware State Police Officers to describe the contents of the surveillance video. Specifically, three officers, Detective Christian Brown, Detective Tenebruso, and Detective Steve Rizzo ("Detective Rizzo"), viewed the video on October 20, 2011, immediately following the shooting. Each detective saw a male exit room 211 and meet with an unknown male outside of Harvey's room. Detective Tenebruso identified

---

[44] Transcript of trial testimony of Detective Brown, *State v. Whitehurst*, No. 1110014096, Docket No.108, at *26-30 (Oct. 16-17, 2012).
[45] Def.'s Motion for Missing Evidence Instruction, *State v. Whitehurst*, No. 1110014096, Docket No. 25 (July 9, 2012).
[46] Def.'s Motion for Missing Evidence Instruction, *State v. Whitehurst*, No. 1110014096, Docket No. 25, at ¶4 (July 9, 2012).
[47] Def.'s Motion for Missing Evidence Instruction, *State v. Whitehurst*, No. 1110014096, Docket No. 25, at ¶8 (July 9, 2012).
[48] Order, *State v. Whitehurst*, No. 1110014096, Docket No. 47 (Aug. 24 2012) (citing *McCrey v. State*, 2008 WL 187947, at *2 (Del. Jan. 3, 2008)).

10

the male emerging from room 211 as the Defendant.[49]  Detective Tenebruso had patrolled the

Budget Inn area for nine years and recognized Defendant by his build and gait.[50]  The detectives

all testified that the unknown male seen with the Defendant carried what appeared to be a rifle or

a "long gun."[51]  At trial, the detectives described the two men entering Harvey's room.  Both

Detective Brown and Detective Rizzo stated that they lined up against the wall in tactical SWAT

formation.[52]  Detective Tenebruso stated that Defendant and the unknown male "stormed into the

room at a quick pace."[53]  The detectives then stated that both men exited the room shortly

thereafter.[54]  Detectives Brown and Tenebruso testified to seeing Harvey exit the room, followed

by Bey.[55]

Following the close of evidence, trial counsel renewed the motion for a missing evidence

instruction arguing that the police failed to gather as well as preserve the surveillance video.[56]

Specifically, trial counsel argued that the evidence presented at trial greatly enhanced the factual

record underlying his initial motion.[57]  The Court, independent of the Court's previous ruling

denying Defendant's Motion for a Missing Evidence Instruction, ruled that the facts of the case

did not warrant a missing evidence instruction.[58]

---

[49] Transcript of trial testimony of Detective Tenebruso, *State v. Whitehurst*, No. 1110014096, Docket No. 123, at *9 (Oct. 22, 2012).

[50] Transcript of trial testimony of Detective Tenebruso, *State v. Whitehurst*, No. 1110014096, Docket No. 123, at *10-11 (Oct. 22, 2012).

[51] *See, e.g.*, Transcript of trial testimony of Detective Rizzo, *State v. Whitehurst*, No. 1110014096, Docket No.126, at *36 (Oct. 25, 2012).

[52] Transcript of trial testimony of Detective Rizzo, *State v. Whitehurst*, No. 1110014096, Docket No.126, at *36-37 (Oct. 25, 2012); Transcript of trial testimony of Detective Brown, *State v. Whitehurst*, No. 1110014096, Docket No.108, at *21 (Oct. 16-17, 2012).

[53] Transcript of trial testimony of Detective Tenebruso, *State v. Whitehurst*, No. 1110014096, Docket No. 123, at *10 (Oct. 22, 2012).

[54] *See, e.g.*, Transcript of trial testimony of Detective Rizzo, *State v. Whitehurst*, No. 1110014096, Docket No.126, at *37 (Oct. 25, 2012).

[55] Transcript of trial testimony of Detective Tenebruso, *State v. Whitehurst*, No. 1110014096, Docket No. 123, at *19 (Oct. 22, 2012); Transcript of trial testimony of Detective Brown, *State v. Whitehurst*, No. 1110014096, Docket No.108, at *22 (Oct. 16-17, 2012).

[56] Trial Transcript, *State v. Whitehurst*, No. 1110014096, Docket No.118, at *7-8 (Oct. 26, 2012).

[57] Trial Transcript, *State v. Whitehurst*, No. 1110014096, Docket No.118, at *7-8 (Oct. 26, 2012).

[58] Trial Transcript, *State v. Whitehurst*, No. 1110014096, Docket No.118, at *45 (Oct. 26, 2012).

### III. DEFENDANT'S MOTION TO OPPOSE

On June 29, 2015, after receiving Mr. Collins' Motion to Withdraw as Counsel the Court directed the State to file a response by August 7, 2015.[59] On October 16, 2015, having not received any response from the State, the Court inquired into the matter and realized that the address to which the August 7, 2015, Scheduling Order was sent was "820 North French Street, 7th *Street*" rather than "820 North French Street, 7th *Floor*."[60] The Court believed that, due to this typographical error, the State had not received the Scheduling Order.[61] Therefore, the Court extended the State's deadline for filing a response to November 7, 2015.[62]

On November 2, 2015, Defendant filed a Motion to Oppose, arguing that there was no typographical error in the State's address in the Court's previous Scheduling Order and that by allowing the State to file an untimely response the Court was biased against the Defendant and the decision was prejudicial to him.[63] Defendant's argument is without merit. The Court's letter dated August 7, 2015, included the typographical error, leading the Court to believe that the State had not received the prior Scheduling Order. The Delaware Supreme Court has stated that this Court has inherent power to "manage its own affairs and to achieve the orderly and expeditious disposition of its business."[64] The Court was exercising this power when it extended the State's deadline. For these reasons, Defendant's Motion to Oppose is **DENIED**.

### IV. DEFENDANT'S MOTION FOR POSTCONVICTION RELIEF

Defendant makes three claims in his Motion for Postconviction Relief. Defendant's first contention is, "Ineffective assistance of counsel. A motion was made to counsel to amend my

---

[59] Letter, *State v. Whitehurst*, No. 1110014096, Docket No. 149 (June 29, 2015).
[60] Letter, *State v. Whitehurst*, No. 1110014096, Docket No. 149 (June 29, 2015).
[61] *See* Letter, *State v. Whitehurst*, No. 1110014096, Docket No. 150 (Oct. 16, 2015).
[62] Letter, *State v. Whitehurst*, No. 1110014096, Docket No. 150 (Oct. 16, 2015).
[63] Motion to Oppose, *State v. Whitehurst*, No. 1110014096, Docket No. 151 (Nov. 2, 2015).
[64] *Gebhart v. Ernest DiSabatino & Sons, Inc.*, 264 A.2 157, 159 (Del. 1970).

opening brief. It was filed with Superior Court and counsel. I have a copy as while [sic]."

Defendant next contends "Discovery Rule 16 and *Brady*. State's duty to preserve evidence

extends not only to Attorney General's office but all investigative agencies, local, county and

state."[65] Defendant's last contention is, "State must bear responsibility for lost material

evidence, a jury instruction is required as a matter of due process."[66] Defendant states in

support:

> Counsel did not appeal for a missing evidence instruction on my opening brief.
> Counsel did file a motion to the courts for a jury instruction, but was denied by
> Judge Jane [sic] Jurden.[67] This created incriminating evidence that limited our
> defense to challenge witnesses testimony. Failure to be able to investigate the
> credibility of the State witnesses without the support of the videotape. This is
> why my counsel put a motion in for missing evidence instruction. But was denied
> by Judge Jane [sic] Jurden. You will see Judge M. Jane Brady did my trial. In
> reviewing potentially inculpatory and exculpatory evidence, government had duty
> to preserve material. Under disclosure of Brady Rule 16 (Del. C. Ann. Const. Art.
> 4, § 19). I the defendant contend the trial judge erred by not granting a jury
> instruction for missing evidence, because the State failed to preserve the
> videotape that recorded testimony from witnesses with no video tape. So in
> fairness to the defense the court was required to give a missing evidence
> instruction.[68]

## V. CONFLICT COUNSEL'S MOTION TO WITHDRAW

On December 19, 2014, conflict counsel filed a Motion to Withdraw indicating that he

had reviewed the record and examined Defendant's grounds for relief and, after review, was

unable to ethically advocate on behalf of the Defendant.[69] Conflict counsel noted that Defendant

does not specify what evidence the State failed to preserve, but assumes that it is the surveillance

---

[65] Def.'s Mot. for Postconviction Relief, *State v. Whitehurst*, No. 1110014096, Docket No. 134 (April 14, 2014) (citing U.S.C.A. Const. Amend. 14; Del. C. Ann. Const. Art. 1, § 7).
[66] Def.'s Mot. for Postconviction Relief, *State v. Whitehurst*, No. 1110014096, Docket No. 134 (April 14, 2014) (citing U.S.C.A. Const. Amends. 5, 14; Del. C. Ann. Const.).
[67] (Now President) Judge Jan Jurden did decide the Motion pretrial. Judge Jane Brady was the trial judge.
[68] Def.'s Mot. for Postconviction Relief, *State v. Whitehurst*, No. 1110014096, Docket No. 134 (April 14, 2014).
[69] *See* Motion to Withdraw as Counsel, *State v. Whitehurst*, No. 1110014096, Docket No. 146 (Dec. 19, 2014).

13

video from the Budget Inn.[70] Conflict counsel contends that he can find no error with appellate counsel's decision not to raise this issue regarding a missing evidence instruction on appeal because the Court denied the requests on two separate occasions.[71] Conflict counsel further argues that the merits of the claim are not with the Defendant because the State's failure to gather the surveillance video did not result from misconduct or negligence by the Delaware State Police.[72] Specifically, conflict counsel notes that the Delaware State Police were told that the surveillance video would be preserved for thirty days and returned eight days later to attempt to download the footage, which had been destroyed.[73] Conflict counsel argues that there was no basis to contend there was a *Brady* violation because, based on the testimony of the three detectives, the surveillance video did not contain exculpatory evidence, rather it contained inculpatory evidence.[74]

## VI. STATE'S RESPONSE

The State argues that appeal counsel was not ineffective for failing to raise the issue of a missing evidence instruction on appeal.[75] Specifically, the State notes that a request for a missing evidence instruction was presented to the Court on two separate occasions, once before trial and once at the close of evidence at trial, that the Court performed the proper legal analysis, and that the Court properly denied both requests.[76] The State further argues that Defendant's claim that the State's failure to preserve *Brady* evidence was reversible error is similarly without merit.[77] Specifically, the State notes that Defendant has failed to specify what evidence the State

---

[70] Motion to Withdraw as Counsel, *State v. Whitehurst*, No. 1110014096, Docket No. 146, at *17 (Dec. 19, 2014).
[71] Motion to Withdraw as Counsel, *State v. Whitehurst*, No. 1110014096, Docket No. 146, at *16 (Dec. 19, 2014).
[72] Motion to Withdraw as Counsel, *State v. Whitehurst*, No. 1110014096, Docket No. 146, at *16 (Dec. 19, 2014).
[73] Motion to Withdraw as Counsel, *State v. Whitehurst*, No. 1110014096, Docket No. 146, at *16-17 (Dec. 19, 2014).
[74] Motion to Withdraw as Counsel, *State v. Whitehurst*, No. 1110014096, Docket No. 146, at *17 (Dec. 19, 2014).
[75] State's Response, *State v. Whitehurst*, No. 1110014096, Docket No. 152, at *3 (Nov. 10, 2015).
[76] State's Response, *State v. Whitehurst*, No. 1110014096, Docket No. 152, at *3 (Nov. 10, 2015).
[77] State's Response, *State v. Whitehurst*, No. 1110014096, Docket No. 152, at *3-4 (Nov. 10, 2015).

failed to preserve.[78] The State, assuming that the evidence to which Defendant refers is the surveillance video from the Budge Inn, argues that the video was never in the possession of the State or the Delaware State Police.[79] The State further argues that the video did not contain exculpatory footage and thus the video is not *Brady* evidence.[80]

## VI. PROCEDURAL BARS

Before addressing the merits of Defendant's claims, the Court must apply the procedural bars set forth in Superior Court Criminal Rule 61(i).[81] The version of the Rule in effect at the time that this Motion was filed,[82] requires the Court to reject a motion for postconviction relief if it is procedurally barred. That Rule provides that a motion is procedurally barred if the motion is untimely, repetitive, a procedural default exists, or the claim has been formerly adjudicated.[83] Rule 61(i)(1) provides that a motion for postconviction relief is time barred when it is filed more than one year after the conviction has become final or one year after a retroactively applied right has been newly recognized by the United States Supreme Court or by the Delaware Supreme Court.[84] Rule 61(i)(2) provides that a motion is repetitive if the defendant has already filed a Motion for Postconviction Relief and a claim is repetitive if the defendant has failed to raise it during a prior postconviction proceeding, unless "consideration of the claim is warranted in the interest of justice."[85] Rule 61(i)(3) bars consideration of any claim "not asserted in the proceedings leading to the conviction" unless the petitioner can show "cause for relief from the

---

[78] State's Response, *State v. Whitehurst*, No. 1110014096, Docket No. 152, at *3-4 (Nov. 10, 2015).
[79] State's Response, *State v. Whitehurst*, No. 1110014096, Docket No. 152, at *3-4 (Nov. 10, 2015).
[80] State's Response, *State v. Whitehurst*, No. 1110014096, Docket No. 152, at *3-4 (Nov. 10, 2015).
[81] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).
[82] As the Delaware Supreme Court noted in *Collins v. State*, a Motion for Postconviction Relief is controlled by the version of Rule 61 in effect when the motion was filed and not by any former version of the rule. *Collins v. State*, 2015 WL 4717524, at *1 (Del. Aug. 6, 2015).
[83] *See* Super. Ct. Crim. R. 61(i)(1)-(4) (2014).
[84] Super. Ct. Crim. R. 61(i)(1) (2014).
[85] Super. Ct. Crim. R. 61(i)(2) (2014).

15

procedural default" and "prejudice form violation of the movant's rights."[86]  Rule 61(i)(4)

provides that any claim that has been adjudicated "in the proceedings leading to the judgment of

conviction, in an appeal, in a postconviction proceeding, or in a federal habeas corpus

proceedings" is barred "unless reconsideration of the claim is warranted in the interest of

justice."[87]

If a procedural bar exists, the Court will not consider the merits of Defendant's

postconviction claim unless Defendant can show that the exception found in Rule 61(i)(5)

applies.[88]  Rule 61(i)(5) provides that the procedural bars can be overcome if Defendant makes

out a "colorable claim that there was a miscarriage of justice because of a constitutional violation

that undermines the fundamental legality, reliability, integrity or fairness of the proceedings

leading to the judgment of conviction."[89]

No procedural bar is applicable in this case because Defendant's claims are not untimely

or repetitive, and the claims have not been formerly adjudicated pursuant to Rule 61(i)(4).

## VII. ANALYSIS

## A. Applicable Law

Under *Strickland v. Washington*, to prevail on a claim of ineffective assistance of

counsel, a petitioner must show that counsel's performance was deficient and that the deficiency

prejudiced the defendant.[90]  Because Defendant must prove both prongs of *Strickland*, "a court

need not determine whether counsel's performance was deficient before examining the prejudice

suffered by the defendant as a result of the alleged deficiencies."[91]  Instead, "[i]f it is easier to

---

[86] Super. Ct. Crim. R. 61(i)(3) (2014).
[87] Super. Ct. Crim. R. 61(i)(4) (2014).
[88] *See* Super. Ct. Crim. R. 61(i)(5) (2014).
[89] *Id.*
[90] *Strickland v. Washington*, 446 U.S. 668, 687 (1984).
[91] *Id.* at 697.

dispose of an ineffectiveness claim on the grounds of lack of sufficient prejudice, . . . that course should be followed."[92]

To establish deficient performance, a petitioner must demonstrate that counsel's representation "fell below an objective standard of reasonableness."[93] "Because it is 'all too easy for a court[] examining counsel's defense after it has proved unsuccessful' to succumb to the 'distorting effects of hindsight,' counsel's actions are afforded a strong presumption of reasonableness."[94] *Strickland* requires "the use of an objective standard of reasonableness based on 'prevailing professional norms' when evaluating an attorney's conduct."[95] A court's task is to "reconstruct the circumstances of counsel's challenged conduct, and to *evaluate the conduct from the counsel's perspective at the time.*"[96] The prejudice prong "requires more than a showing of theoretical possibility that the outcome was affected."[97] Instead, the defendant must actually show a reasonable probability of a different result but for counsel's alleged errors, therefore "it is not enough to show that the errors had some conceivable effect on the outcome of the proceeding."[98]

"[T]he failure of the government 'to take adequate steps to preserve evidence may deny a defendant due process and thereby jeopardize otherwise viable convictions.'"[99] In *Deberry*, the Delaware Supreme Court held that the State's duty to disclose evidence includes a duty to preserve it, which extends not only to the Attorney General's office, but all local, county, and

---

[92] *Id.*
[93] *Id.* at 688.
[94] *Neal v. State*, 80 A.3d 935, 942 (Del. 2013) (quoting *Strickland v. Washington*, 466 U.S. 668 (1984)).
[95] *Id.*
[96] *Id.*
[97] *Frey v. Fulcomer*, 974 F.2d 348, 358 (3d Cir. 1992).
[98] *Harrington v. Richter*, 131 S.Ct. 770, 787 (quoting *Strickland*, 446 U.S. at 693).
[99] *Deberry v. State*, 457 A.2d 744, 751 (Del. 1983) (quoting *Government of the Virgin Islands v. Testamark*, 5701 F.2d 1162, 1165-66, N. 7 (3d Cir. 1978)).

state investigative agencies.[100]   When reviewing a claim that the State failed to preserve potentially exculpatory evidence, the Court must consider: "(i) whether the requested material, if in the possession of the State at the time of the request, would have been subject to disclosure under Superior Court Criminal Rule 16 or under *Brady v. Maryland*;[101] (ii) if so, whether the State had a duty to preserve the material; and (iii) if there was a duty to preserve, whether the State breached that duty and what consequences should flow from that breach."[102]   This Court has previously held that "when the State is unaware of, or does not have possession of the evidence, there is no requirement to give a spoliation instruction."[103]   Furthermore, in *Johnson v. State*, the Supreme Court affirmed the trial court's decision not to give a *Deberry* instruction, holding "that when the government plays no role in the destruction of the evidence, a spoliation charge is not appropriate."[104]

In determining what consequences should flow from a breach of the State's duty to preserve evidence, the Court must draw a balance between the nature of the State's conduct and the degree of prejudice to the accused.[105]   The State must justify the conduct, and the defendant must show how his defense was impaired by the loss of the evidence.[106]   In general, the Court should consider "'(1) the degree of negligence or bad faith involved, (2) the importance of the

---

[100] *Id.*

[101] There are three components to a *Brady* violation: "(1) evidence exists that is favorable to the accused, because it is ether exculpatory or impeaching; (2) that evidence is suppressed by the State; and (3) its suppression prejudices the defendant." *Wright v. State*, 91 A.3d 972, 988 (Del. 2014) (quoting *Starling v. State*, 882 A.2d 747, 756 (Del. 2005) (citing *Stickler v. Greene*, 527 U.S. 263, 281-82 (1936))).  With regard to the third component, a defendant is not required to show that the disclosure of the suppressed evidence would have resulted in acquittal, rather "the defendant must show that the State's evidence creates 'a *reasonable probability* that, had the evidence been disclosed the result of the proceeding would have been different.'" *Id.* (emphasis in original).

[102] *McCrey v. State*, 2008 WL 187947, at *2 (Del. Jan. 3, 2008) (citing *Brady v. Maryland*, 373 U.S. 83 (1963); *Wainer v. State*, 2005 WL 535010, at *2 (Del. Feb. 15, 2005); *Hammond v. State*, 569 A.2d 81, 85-87 (Del. 1989); *Lunnon v. State*, 710 A.2d 197, 199-200 (Del. 1998); *Deberry*, 457 A.2d at 750).

[103] *State v. Burns*, 2007 WL 2677064, at *8 (Del. Super. Ct. Sept. 11, 2007).

[104] *Id.* (citing *Johnson v. State*, 753 A.2d 438 (Del. 2000)).

[105] *Deberry*, 457 A.2d at 751.

[106] *Id.*

lost evidence, and (3) the sufficiency of the other evidence adduced at the trial to sustain the conviction.'"[107]

### B. Discussion

The State and conflict counsel separate Defendant's arguments into two claims, an alleged *Brady* violation and the denial of the missing evidence instruction. The Court, however, is not convinced that Defendant has two claims, rather these two claims are one and the same. The State and conflict counsel further assert uncertainty regarding what *Brady* evidence the Defendant refers to in his Motion for Postconviction Relief. It is patiently clear to the Court, however, that Defendant is referring to the Budget Inn's surveillance video.

Prior to trial, the Court denied Defendant's request for a missing evidence instruction because the State was never in possession of the video, there was no evidence of negligence or bad faith with respect to the police officers' efforts to retrieve or secure the video, and the police officers' reliance on the representations made by the Budget Inn's employee and the DVR installer was not unreasonable.[108] In addition, after the close of evidence at trial the Defendant renewed his motion for a missing evidence instruction, which was independently denied by the Court.[109]

*Deberry's* first prong provides: "whether the requested material, if in the possession of the State at the time of the request, would have been subject to disclosure under Superior Court Criminal Rule 16 or under *Brady*."[110] This prong is not applicable because the State never had possession of the surveillance video.

---

[107] *Id.* (quoting *United States v. Loud Hawk*, 628 F.2d 1139, 1152 (9th Cir. 1979)).

[108] Order, *State v. Whitehurst*, No. 1110014096, Docket No. 47 (Aug. 24, 2012).

[109] Trial Transcript, *State v. Whitehurst*, No. 1110014096, Docket No.118, at *45 (Oct. 26, 2012).

[110] *Deberry*, 457 A.2d at 750.

Pursuant to the second prong of *Deberry*, the Court must determine whether the state had a duty to preserve the missing evidence. Under the facts of this case, the State did not have a duty to preserve the video, because they never had possession of it. They did, in fact, attempt to collect the video. Failure to collect evidence that might be exculpatory does not warrant a *Deberry* instruction unless the police have reason to believe the evidence might be exculpatory.[111] The evidence in this case does not support such a finding. Without the ability to view the surveillance video, neither the State in the first instance, nor the Court on review, is able to determine whether it contained *Brady* evidence. However, based upon the testimony of the State's witnesses and the testimony of the Defendant himself, it appears to contain no exculpatory evidence. The one aspect of what might be visible in the video that the Defendant disputes is the manner and timing of entering and exiting Harvey's room. Independently of the officer's description of the disputed events, both Harvey and Debbie Pyle contradict the Defendant's accounts of his entry and exit of the room.

Having determined that the first and second prongs of *Deberry* are inapplicable based on the facts of this case, the Court finds that the State did not breach its duty to preserve and collect potentially exculpatory evidence. However, assuming, *argudeno*, that the State did breach its duty, the consequence of such a breach would not be a missing evidence instruction. *Deberry's* third prong requires the Court to determine what consequences should flow from such a breach.[112] In making this determination, the Court considers: "(1) the degree of negligence or bad faith involved, (2) the importance of the lost evidence, and (3) the sufficiency of the other evidence adduced at the trial to sustain the conviction."[113]

[111] *Powell v. State*, 49 A.3d 1090, 1101-02 (Del. 2012).
[112] *Id.*
[113] *Id.* (quoting *United States v. Loud Hawk*, 628 F.2d 1139, 1152 (9th Cir. 1979)).

In *Wainer v. State*, the investigating officer, Jeffrey Melvin ("Officer Melvin"), took notes during interviews he conducted with three witnesses.[114] After Officer Melvin had incorporated his notes into his police report, he destroyed them.[115] The Defendant subsequently requested a missing evidence instruction asking the Court to direct the jury to presume that the missing notes were exculpatory.[116] The trial court denied this request and the Delaware Supreme Court affirmed the trial court's ruling.[117] The Supreme Court found that there was no bad faith on behalf of Office Melvin in destroying the notes.[118] The Supreme Court further opined that even if Officer Melvin was negligent, there was no evidence that this prejudiced the defendant's case because the notes were incorporated into the police report and were not material to establish the defendant's defense, the trial court found that there was no evidence that the notes contained exculpatory evidence, and there was sufficient evidence to support the jury's verdict.[119]

Similarly, in *Turner v. State*, police arrested the defendant after observing him take money from three individuals and hand them plastic bags.[120] The police transported the defendant to the Wilmington Police Department and strip searched him under surveillance video.[121] According to the officer's testimony, a packet containing 2.5 grams of crack cocaine fell out of the defendant's pants as he handed them to police.[122] The defendant requested a missing evidence instruction because the surveillance video was unavailable at trial.[123] Officers testified at trial that the use of surveillance video was to protect officers from complaints lodged against them by defendants and that if no such complaints were made, the video would be

---

[114] *Wainer v. State*, 2005 WL 535010, at *2 (Del. Feb. 15, 2005).
[115] *Id.*
[116] *Id.*
[117] *Id.*
[118] *Id.*
[119] *Id.* at *3.
[120] *Turner v. State*, 2006 WL 453247, at *1 (Del. Feb. 24, 2006).
[121] *Id.* at *1.
[122] *Id.*
[123] *Id.*

destroyed thirty days after it was recorded.[124] No complaint had been made against the officers and the surveillance video was subsequently destroyed.[125] The trial court denied this request.[126] The Supreme Court affirmed the trial court, holding that the surveillance video was not destroyed in bad faith, there was no duty to preserve the video, and that the fact that the video was missing did not substantially prejudice the defendant.[127]

The instant matter is analogous to both *Wainer* and *Turner*. There is no evidence that the detectives acted in bad faith or with negligence. Rather, they reasonably relied on statements made by employees at the Budget Inn and the DVR installer who indicated that the footage would not be deleted until thirty days after the incident.[128]

In this case the Defendant essentially claimed that the person who committed the robbery was unknown to him and he was not acting in concert with the unknown individual. The evidence contradicting that assertion and supporting the Defendant's conviction, however, was overwhelming, even without considering the videotape.

The evidence adduced at trial established that prior to the robbery the Defendant approached one of the witnesses (Uncle Butters) seeking a weapon. He also approached another witness (White) to suggest they rob Bey, but White refused. While the Defendant said he was speaking with Harvey when the man with the gun entered the room, Harvey describes his entry very differently, contemporaneous with the man with the weapon. Harvgey barricaded herself in the room's bathroom, from which she heard Bey address the Defendant by name, and saw the Defendant on top of Bey going through Bey's pockets. Another eyewitness (Debbie Pyle) saw

---

[124] *Id.*
[125] *Id.*
[126] *Id.*
[127] *Id.* at *2.
[128] *See* Transcript of trial testimony of Detective Brown, *State v. Whitehurst*, No. 1110014096, Docket No.108, at *26-30 (Oct. 16-17, 2012).

the Defendant run from the room with the unidentified man with the gun. A black sweatshirt, which the Defendant admitted was his, was recovered from room 211 and contained the Defendant's DNA and Bey's blood. Prison phone records showed the Defendant sought to discourage or prevent witnesses, including Harvey, from appearing in court and testifying.

In short, he spoke with persons in advance of the crime and was planning to rob Bey, he was seen participating in the robbery by an eye witness, he was observed running from the scene with the other participant by another eye witness, Bey's blood and the Defendant's DNA were found on Defendant's sweatshirt, and he attempted to elude conviction by tampering with witnesses.

Applying the three prongs of *Deberry*, there was no negligence or bad faith; while the video could have some importance, there was independent evidence of the events that might have been contained in the video; and the evidence adduced at trial overwhelmingly supported a conviction. No *Deberry* instruction was warranted.

Defendant argues that his appellate counsel was ineffective for failing to raise the Court's denial of his request for a missing evidence instruction on direct appeal. Defendant alleges that he informed appellate counsel he wanted to raise this issue on appeal, but appellate counsel refused. Under the first prong of *Strickland*, Defendant must show that his counsel's actions fell below an objective standard of reasonableness. The Court, however, need not determine whether counsel's conduct fell below an objective standard of reasonableness, because the Court finds Defendant was not prejudiced, under the second prong of *Strickland*. Under this prong, Defendant must show a reasonable probability of a different result but for counsel's alleged errors. Two separate Superior Court judges ruled that Defendant was not entitled to a missing evidence instruction. These rulings were consistent with well settled Delaware law. Had

23

appellate counsel raised this issue on direct appeal it would have been futile. The overwhelming evidence presented at trial demonstrates that even had Defendant been entitled to a missing evidence instruction there does not exist a reasonable probability that the result would have been different. Accordingly, Defendant has failed to establish that he was prejudiced under the second prong of *Strickland*.

## VIII. CONCLUSION

For the reasons stated above, Defendant's Motion to Oppose is **DENIED**, Defendant's Motion for Postconviction Relief is **DENIED** and Conflict Counsel's Motion to Withdraw is **GRANTED**. Conflict Counsel has a continuing duty which is limited to notifying the Defendant of the Court's ruling and advising the Defendant of the right to appeal, the rules for filing a timely notice of appeal, and that it is the Defendant's burden to file a notice of appeal, if desired.

**IT IS SO ORDERED.**

_____/s/_____
**M. Jane Brady**
Superior Court Judge

24