# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JAMES WILLIAM FAHRENKRUG,

        Defendant-Appellant.

UNPUBLISHED
February 20, 2018

No. 335664
Oakland Circuit Court
LC No. 2016-258975-FH

Before: GLEICHER, P.J., and BORRELLO and SWARTZLE, JJ.

PER CURIAM.

A jury convicted defendant of one count each of third-degree criminal sexual conduct (CSC-III), MCL 750.520d (sexual penetration with a physically helpless victim), and fourth-degree criminal sexual conduct (CSC-IV), MCL 750.520e (force or coercion), for the sexual assault of a young friend napping on his couch. Defendant's sole contention on appeal is that the court should have instructed the jury that it could draw an adverse inference regarding the content of certain evidence destroyed by the victim. We discern no error and affirm.

## I. FACTS

Defendant is an elderly man who frequented a Royal Oak McDonald's. He befriended an 18-year-old, homeless male employee—RC. Defendant offered his couch as a safe haven for RC to nap upon. RC visited defendant's apartment on several occasions, sometimes to nap and sometimes to spend time with defendant. RC stored some of his clothing at defendant's apartment and defendant allowed RC to use his computer. Defendant described that he tried to be a "father figure" for the young man.

On February 1, 2016, RC awoke from his nap when he felt defendant performing fellatio on him. Defendant grabbed RC's hand and placed it on his penis. RC pulled his hand away, jumped up and left the apartment. RC testified that as he left, defendant stated, "I hope you don't think I'm too much of a perv."

Defendant readily admitted the sex act to the police, claiming that he and RC shared a consensual sexual relationship. It was their ritual, defendant asserted, to watch pornography on RC's cell phone before defendant performed fellatio on RC. By his third police interview, defendant recanted this account and reported that RC was fully asleep on February 1 when

-1-

defendant unzipped his pants and removed his penis before starting fellatio. Defendant then indicated that this was the only sexual encounter between him and RC.

RC denied any consensual sexual relationship and denied watching pornography on his phone with defendant. RC testified that on February 1, 2016, he possessed a cell phone that was given to him by a church homeless shelter. RC "threw . . . away" that phone later in February when he secured a new phone. RC replaced his cell phone before any charges were brought against defendant. And RC insisted, "There was no evidence on there." The lead detective testified that he never asked to see RC's phone and asserted that even if the phone was available to investigate, no pornographic videos viewed on the Internet would be present unless the phone's owner had "downloaded" the material onto the phone.

At trial, defendant requested a special jury instruction regarding RC's missing cell phone. It was essential to his case, defendant asserted, to demonstrate that he and RC shared a consensual sexual relationship. Part of that relationship included watching pornographic videos together on RC's phone. "The Royal Oak Police Department knew that defendant was claiming videos on [RC's] cell phone were viewed as part of the consensual sexual act between the parties and that the videos were consistent with Defendant's version of the events." Yet, the investigating detective failed to secure the evidence. And RC "destroyed potentially exculpatory evidence" by throwing away his phone before charges were brought. This denied defendant a fair trial. Accordingly, he requested the following jury instruction:

> You may find that certain evidence was destroyed prior to the Trial in this case. If you find that any such destroyed evidence may have been potentially exculpatory, you may draw an inference that the evidence would not support the testimony of the complaining witness in this case.

The trial court denied defendant's request. The court noted that this instruction is given when the police lose or destroy evidence, but here, the police never had the phone. Moreover, there was no evidence that RC threw away the phone "deliberate[ly]" or "specifically to try to taint or skew the investigation." Rather, RC simply secured a new phone and no longer needed the old one. The court continued:

> Counsel's statements are all speculative in nature that he believes or he thinks there might have been. And, so there's certainly no indication that there was any sort of evidence let alone that it was exculpatory on that phone.

The court did not prevent defendant from arguing this theory, however. During closing arguments, defense counsel contended that RC purposefully threw away his phone because he knew it contained the pornographic videos that he and defendant watched and therefore would exonerate defendant.

## II. ANALYSIS

We review de novo legal questions underlying a claimed instructional error, and review for an abuse of discretion a court's determination whether a jury instruction applies to the facts of the case. *People v Dupree*, 486 Mich 693, 702; 788 NW2d 399 (2010). "The defendant bears the burden of establishing that the asserted instructional error resulted in a miscarriage of

justice." *Id*. The trial court must grant a defendant's request for a jury instruction if that instruction is supported by record evidence. *People v Riddle*, 467 Mich 116, 124, 649 NW2d 30 (2002).

In Michigan, a criminal defendant "is entitled to have produced at trial all evidence bearing on guilt or innocence that is within *the prosecutor's control*." *People v Davis*, 199 Mich App 502, 514; 503 NW2d 457 (1993), overruled in part on other grounds *People v Grissom*, 492 Mich 296, 319-320; 821 NW2d 50 (2012) (emphasis added). When an agent of the government destroys or loses evidence, a criminal defendant may be entitled to an instruction that "if [the jury] determines that the prosecutor acted in bad faith it may infer that the destroyed, potentially exculpatory evidence would have been favorable to defendant." *People v Cress*, 250 Mich App 110, 157; 645 NW2d 669 (2002), rev'd on other grounds 468 Mich 678; 664 NW2d 174 (2003). Michigan courts have not extended this principle to cases in which the victim of the defendant's crime destroys potentially exculpatory evidence, either intentionally or unintentionally. Indeed, other jurisdictions have expressly declined to make this extension. See *United States v Wise*, 221 F3d 140 (CA 5, 2000); *Matthews v State*, 132 So3d 646 (Miss Ct App, 2014); *Johnson v State*, 753 A2d 438 (Del, 2000). As neither the police nor the prosecutor ever gained control of the victim's cell phone, the prosecution cannot be deemed responsible for its loss and defendant was not entitled to an adverse inference instruction.

We further note that defendant was not prejudiced by the lack of an instruction in this case. A victim's destruction of evidence affects the victim's credibility. See *People v Higgins*, 45 AD3d 975; 845 NYS2d 521 (2007). Defense counsel argued in closing argument that defendant and RC had a consensual sexual relationship and had a ritual of watching pornography on RC's phone before engaging in sex acts. Counsel contended that RC threw away the cell phone he used during this relationship, not because he got a new phone, but because he wanted to destroy evidence that would corroborate defendant's version of events. The jury did not credit this theory and convicted defendant as charged, just as it could have done if the adverse inference instruction had been read.

We affirm.

/s/ Elizabeth L. Gleicher
/s/ Stephen L. Borrello
/s/ Brock A. Swartzle