JEFFREY W. McCREY, Defendant Below, Appellant,
v.
STATE OF DELAWARE, Plaintiff Below, Appellee.
No. 286, 2007.
Supreme Court of Delaware.
Submitted: December 12, 2007.
Decided: January 3, 2008.
Before, STEELE, Chief Justice, JACOBS and RIDGELY, Justices.

ORDER
JACK B. JACOBS, Justice.
This 3rd day of January 2008, upon consideration of the briefs of the parties and the record in this case, it appears to the Court that:
1. Jeffrey McCrey ("McCrey"), the defendant below, appeals from his Superior Court convictions of aggravated menacing (three counts), possession of a deadly weapon during the commission of a felony, terroristic threatening (two counts), shoplifting, and conspiracy in the third degree. The sole issue before us is whether the trial court erred in denying McCrey's request for a missing evidence instruction. We find that the Superior Court properly denied McCrey's request and affirm.
2. On August 2, 2006, Paul Sutton ("Sutton"), a Pathmark grocery store employee, observed a woman who was shopping in the store place items from a hand-held shopping basket into a backpack carried by McCrey. Suspecting them of shoplifting, Sutton and two other Pathmark employees, Eugene Brown ("Brown") and Sean Bradshaw ("Bradshaw"), asked McCrey and his fellow shopper to come to the manager's office. In the office, Sutton instructed Brown to calculate the value of the items found in the backpack. Brown left the room and returned with a total of $120. Meanwhile, an assistant manager called the police to report the shoplifting.
3. Hearing that the police had been called, McCrey became "edgy." Minutes later, McCrey took a knife out of his pocket, waived it around, lunged at the three employees and threatened that he was going to "gut" them. Both McCrey and his confederate then fled the store. The employees followed McCrey outside toward a bus stop and watched the motion of his hand towards his confederate "as if he handed something to her." The two then ran in separate directions.
4. Meanwhile, Trooper Edward Larney ("Larney") was driving towards Pathmark to investigate the incident. While near the store, Larney saw the three employees, who informed him that McCrey was still in sight. Larney turned his car around, caught up with McCrey and arrested him. When Larney asked where the knife was, McCrey responded "I didn't have a knife. It was a comb." Larney testified that, in searching McCrey, he found "a lighter and several small objects."
5. At trial, McCrey admitted to shoplifting, fleeing from the store, and making threats in an effort to escape. Consistent with his earlier statement to Larney, McCrey denied having a knife, and explained that, while in the manager's office, he had actually pulled out a black rat tail comb. McCrey also testified that the comb was in his pocket at the time of his arrest, and that Larney later told McCrey that he (Larney) threw the comb away because McCrey was "not allowed to have it over at Gander Hill."
6. Another trooper, Corporal Thomas Rhoades, also responded to the incident, and arrived at the store after McCrey's arrest. Rhoades saw video equipment and asked the employees if the incident had been recorded. The employees told him that management had just installed a surveillance system and that they would have to contact the technical support person to see if a video was available. The employees indicated, however, that the interior of the manager's office where the alleged knife incident had taken place, was not under surveillance. They also told Rhoades that they would call him the next day "if the video was available" or "if anything was captured on video." Rhoades testified that because no one called him back, he assumed that no video was available. Sutton testified, however, that a surveillance video had recorded both the shoplifting incident and the exterior to the manager's office. Sutton also testified that he had watched the tape, which showed the group entering the office and, approximately five minutes later, "the defendant kicking open the office door onto the floor" and running out with "an object in his right hand." According to Sutton, the store recorded over the tape three months thereafter.
7. At trial, McCrey requested a missing evidence instruction, arguing that the surveillance tape had been destroyed as a result of the police's failure to gather evidence. A missing evidence instructioncommonly referred to as a Lolly[1] or Deberry[2] instructionrequires "the jury [to] infer that, had the evidence been preserved, it would have been exculpatory to the defendant."[3] The trial court denied McCrey's request, citing our decision in Turner v. State.[4] This appeal followed.
8. We review a trial court's denial of a requested missing evidence jury instruction de novo.[5] In reviewing a claim that the State failed to preserve potentially exculpatory evidence, we must consider: (i) whether the requested material, if in the possession of the State at the time of the request, would have been subject to disclosure under Superior Court Criminal Rule 16 or under Brady v. Maryland;[6] (ii) if so, whether the State had a duty to preserve the material; and (iii) if there was a duty to preserve, whether the State breached that duty and what consequences should flow from that breach.[7] Those consequences are determined in accordance with a three-part test, which considers: "[(i)] the degree of negligence or bad faith involved; [(ii)] the importance of the missing evidence considering the probative value and reliability of secondary or substitute evidence that remains available; and [(iii)] the sufficiency of the other evidence produced at the trial to sustain the conviction."[8]
9. This Court has rejected the federal standard that requires a defendant to show bad faith on the part of the police to prevail in a claim for lack of due process.[9] Where "the State does not act negligently or in bad faith in failing to preserve evidence, and the missing evidence does not substantially prejudice the defendant's case," a missing evidence instruction is not necessary.[10]
10. In this case, the State concedes that, had the surveillance tape been gathered, it would have been subject to disclosure under Superior Court Criminal Rule 16. The State, however, never had the tape in its possession, nor were the police aware of its existence before it was destroyed. The investigating police officer (Rhoades) was told that someone would contact him the next day if a surveillance tape of the incident was found, but no contact was made. There is no evidence of negligence or bad faith with respect to the officer's investigation, and no error can be attributed to the officer's reliance on the employee's statements. The State had no duty to preserve potentially exculpatory material where the State, in good faith, did not know that such evidence existed.
11. Even assuming, as McCrey does, that the officer was negligent and failed in his duty to gather evidence by not following up on the possible existence of a surveillance tape, any error was harmless beyond a reasonable doubt, because the other evidence produced at the trial was sufficient to sustain the conviction. In weighing the importance of the missing evidence against the probative value and reliability of the available secondary or substitute evidence, we find that the missing evidence did not substantially prejudice McCrey's case. The jury heard Sutton testify about what he saw on the tape. According to Sutton, the video showed McCrey "kicking open the office door" while holding "an object in his hand." All three employees testified that the object was a knife. McCrey's testimony confirmed all the aspects of the incident, except the allegation that he had a knife. Sutton's account of what the video tape showed is consistent with McCrey's testimony that he was carrying an object (although McCrey testified that the object was a comb). The jury was free to adopt either McCrey's or the State's version of the events, and opted for the latter. Because there was no showing that McCrey was substantially prejudiced by the missing evidence, a Deberry instruction was not necessary. We therefore conclude that the Superior Court did not err in denying McCrey's motion for a missing evidence instruction.
NOW, THEREFORE, IT IS ORDERED that the judgments of the Superior Court are AFFIRMED.
NOTES
[1] See Lolly v. State, 611 A.2d 956 (Del. 1992).
[2] See Deberry v. State, 457 A.2d 744 (Del. 1983).
[3] Lunnon v. State, 710 A.2d 197, 199 (Del. 1998).
[4] 2006 WL 453247 (Del. Supr.). In Turner, we affirmed the denial of a missing evidence instruction. The surveillance tape at issue in Turner was made pursuant to an administrative procedure adopted for purposes of officer safety and for responding to complaints of police improprietynot for the purpose of gathering evidence for a criminal prosecution. Almost one year after the tape was made, the defendant requested production. By then, the tape had been erased in accordance with a standard administrative policy. We concluded that "[w]hile there may be circumstances where a duty to preserve this kind of tape arises, the facts and circumstances of this case do not support that conclusion." We also found that the defendant had not shown that the missing video substantially prejudiced his defense.
[5] Hendricks v. State, 871 A.2d 1118, 1123 (Del. 2005); Gutierrez v. State, 842 A.2d 650, 651 (Del. 2004).
[6] 373 U.S. 83 (1963).
[7] See Wainer v. State, 2005 WL 535010, at *2 (Del. Supr.); Hammond v. State, 569 A.2d 81, 85-87 (Del. 1989); Lunnon, 710 A.2d at 199-200; Deberry, 457 A.2d at 750.
[8] Hammond, 569 A.2d at 86-87 (citing with approval Deberry, 457 A.2d at 752).
[9] Wainer, 2005 WL 535010, at *3 n.14 (citing Lolly, 611 A.2d at 960). See also Anderson v. State, 1999 WL 504332, at *2 (Del. Supr.) ("We have maintained this approach notwithstanding a United States Supreme Court decision requiring the defendant to prove bad faith on the part of the police in preserving the evidence.").
[10] Wainer, 2005 WL 535010, at *3. See also Lunnon, 710 A.2d at 200-01.