JAMES MASON, Defendant Below, Appellant,
v.
STATE OF DELAWARE, Plaintiff Below, Appellee.
No. 521,2008
Supreme Court of Delaware.
Submitted: December 17, 2008.
Decided: January 5, 2009.
Before HOLLAND, BERGER and RIDGELY, Justices.

ORDER
CAROLYN BERGER Justice
This 5th day of January 2009, on consideration of the briefs of the parties, it appears to the Court that:
1) James Mason[1] appeals a delinquency adjudication in which the Family Court found him guilty of first degree rape, two counts of unlawful sexual contact, unlawful imprisonment, terroristic threatening and related charges arising out of an attack on an eight year old girl. Mason argues that the State violated his due process rights by failing to ask the victim whether Mason acted under duress. He also argues that the Family Court was required to sentence Mason to individual counseling because that was the recommendation of the Department of Services for Children, Youth and their Families ("DSCYF"). We find no merit to either argument, and affirm.
2) On the date of the incident, Tracy Miller went to visit her best friend, Mason's sister, who lived nearby. Mason and his friend, John Spalding, were there playing games. Spalding called Miller into a bedroom and closed the door behind her. The two boys were playing "Truth or Dare" and Spalding dared Mason to put his penis in Miller's mouth. Spalding held a knife at Miller's throat while Mason rubbed his penis on her buttocks, turned her over and did the same with her genitals, and finally forced her to open her mouth so he could insert his penis. Miller left the house as soon as she was released.
3) Miller's mother learned about the attack soon after it happened, and reported the matter to the police. Ralph Richardson, of the Children's Advocacy Center, interviewed Miller on July 9, 2007, the same day that the police received the report. During the interview, which was conducted in two parts, Miller said that Spalding "made" Mason hump her and that Spalding told Mason to get on top of her. Richardson never asked any follow-up questions about whether Spalding had forced Mason to engage in the sexual assault.
4) The Family Court found Mason guilty on all charges, and found that the evidence did not support Mason's claim of duress. Before sentencing, Dr. Theresa Dunbar, a child mental health psychologist, evaluated Mason. Based on that evaluation, as well as Mason's compliance with home detention and his participation in therapy sessions during the period before trial, DSCYF recommended that Mason undergo individual counseling while living at home. The Family Court sentenced Mason to an indefinite commitment at Level V suspended for placement at a Level IV sex offender residential treatment program. Mason moved for modification of the sentence, arguing that the court was required by statute to follow DSCYF's recommended treatment plan. The Family Court denied the motion without addressing Mason's legal argument. Mason requested a stay of the Family Court's order for out-of-state placement, which was denied by the Family Court, but granted by this Court. At the same time, this Court expedited the appeal.
5) Mason first argues that the State breached a duty to inquire into possible exculpatory evidence by not asking Miller questions about her statement that Spalding "made" Mason hump her. Mason develops this argument from settled law holding that the State has an obligation to preserve evidence and to disclose exculpatory evidence.[2] We decline to extend the law as Mason urges. When the police investigate a crime, they must preserve any discoverable evidence they collect.[3] But the duty to preserve exculpatory evidence does not include a duty to seek out exculpatory evidence.
6) Here, the CAC interviewer explained that, because of their limited attention span, interviews of young children must be conducted in a short time period. He did not get the sense that the victim's use of the word "made" was meant to suggest that Mason was under duress. As a result, he did not follow-up with questions about that possibility. Finally, Mason was not prejudiced by the failure to ask questions during the CAC interview, as he had the opportunity to question the victim at trial. She testified that Mason was not being forced to assault her.
7) Mason also argues that the trial court was required to follow DSCYF's recommended treatment services when sentencing him. He relies on 10 Del. C. § 1009 (c) (15), which authorizes the Family Court to, "[ojrder such other treatment, rehabilitation or care as in the opinion of [DSCYF] would best serve the needs of the child and society." Mason contends that this provision requires the trial court to follow DSCYF's recommendation.
8) In advancing this argument, Mason ignores the beginning of § 1009 (c), which provides, "[fjollowing an adjudication in which the Court declares that a child is delinquent, it may " The statute then lists 17 different sentencing options. The word "may" generally is permissive, not mandatory,[4] and there is nothing in the wording or purpose of the statute to suggest that the General Assembly intended to limit the trial court's discretion to act under any of the 17 subsections of § 1009 ©). Thus, we conclude that the Family Court acted within its discretion in sentencing Mason to rehabilitation in a residential treatment facility rather than counseling at home.
NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court be, and the same hereby is, AFFIRMED.
NOTES
[1] The Court assigned pseudonyms for the appellant, and the other minors involved in the attack, pursuant to Supreme Court Rule 7 (d).
[2] Deberry v. State, 457 A.2d 744 (Del. 1983); Brady v. Maryland, 373 U.S. 83 (1963).
[3] Deberry v. State, 457 A.2d at 752.
[4] Elf Atochem North America, Inc. v. Jaffari & Malek, LLC, 727 A.2d 286, 296 (Del. 1999).