# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Cr. ID No. 1508015476 A & B |
| HAKIEM ANDERSON, | ) ) | |
| Defendant. | ) ) ) | |

Submitted: October 5, 2020
Decided: October 19, 2020

## COMMISSIONER'S REPORT AND RECOMMENDATION THAT DEFENDANT'S MOTION FOR POSTCONVICTION RELIEF SHOULD BE DENIED

Brian L. Arban, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, Attorney for the State of Delaware.

Michael W. Modica, Esquire, counsel for Defendant

**MAYER,** Commissioner

1

This 19th day of October, 2020, upon consideration of Defendant's Motion for Postconviction Relief (the "Motion"), I hereby recommend as follows:

## BACKGROUND

On the night of August 15, 2015, Defendant got into an argument with Markevis Clark ("Clark").[1] Defendant walked away but later returned, and shot Clark in the head. Three eyewitnesses saw the shooting – Keisha Waters ("Waters"), Theresa Brooks ("Brooks") and Joseph Brown ("Brown"). Brown was Clark's brother. During trial, the State presented a prior recorded statement from Arto Harrison ("Harrison"), Clark's biological father, implicating Defendant in the shooting. Although subpoenaed to testify for the State, Harrison failed to appear as scheduled. However, after the State concluded its case, Harrison unexpectedly appeared and was willing to testify on Defendant's behalf. Brown testified during the State's case in chief. Brown was not cooperative during trial and often interjected his own personal non-responsive thoughts into the testimonial process.

The jury found Defendant guilty of each of the charged offenses. On December 8, 2017, Defendant was sentenced as follows: Murder First Degree, Level V for the balance of his natural life as a mandatory sentence pursuant to 11 Del. C. §636(a)(1); Possession of a Firearm During the Commission of a Felony ("PFDCF") five years at

---

[1] For a full recitation of the facts, see Defendant's Motion at pgs. 3-7.

2

Level V as a mandatory sentence pursuant to 11 Del. C. §1447A(A); and Possession of a Firearm by a Person Prohibited ("PFBPP") fifteen years at Level V, suspended after ten years for two years at Level III, the first ten years was a mandatory term of incarceration pursuant to 11 Del. C. §1148(e)(2)(b).[2]

Defendant appealed and argued, amongst other things, that the Superior Court abused its discretion by: (i) permitting the jury to hear recorded prison phone calls during which Defendant may have solicited family members to tamper with witnesses; (ii) allowing the State to play a recorded statement of Harrison as an unavailable witness; and (iii) denying his motion for a mistrial after Harrison voluntarily appeared after the prosecution had rested. On November 20, 2018, the Supreme Court issued a decision affirming the conviction.[3]

On February 21, 2019, Defendant filed a *pro se* Motion for Postconviction Relief and Motion for Appointment of Counsel, with Memorandum of Law.[4] The Court granted his request for counsel,[5] and on November 14, 2019, post-conviction counsel filed

---

[2] D.I. # 53. The PFBPP charge was severed from the original case and Defendant was later convicted of PFBPP after a separate bench trial.

[3] D.I. # 66, Supreme Court Case No. 559, 2017; *Anderson v. State*, 2018 WL 6068736 (Del. Nov. 20, 2018).

[4] D.I. # 67. All docket references will be to the lead case # 1508015476A.

[5] D.I. # 71.

Defendant's Rule 61 Motion for Postconviction Relief (the "Motion").[6] Trial Counsel submitted an Affidavit[7] and the State filed a Response to the Motion.[8] On June 1, 2020, Defendant filed a Reply Brief[9] and included an argument that was not present in the original Motion. The Court directed Trial Counsel to submit an additional affidavit,[10] the State submitted a supplemental response[11] and Defendant filed a supplemental reply.[12] Briefing is now complete.

Defendant claims Trial Counsel erred because he failed to: (1) object to Brown's highly prejudicial and non-responsive answers during his direct testimony; (2) object to a replay of the Harrison video interview; (3) avoid eliciting testimony that Defendant's fingerprints were in the Automated Fingerprint Identification System (AFIS); (4) investigate and obtain favorable recordings of Defendant's telephone conversations with Harrison; and (5) request a missing/lost evidence instruction in response to the State's failure to preserve all prison phone calls.

---

[6] D.I. #s 77, 78.

[7] D.I. # 86.

[8] D.I. #s 87, 88.

[9] D.I. # 92.

[10] D.I. # 93.

[11] D.I. # 94.

[12] D.I. # 98.

## DISCUSSION

Before considering the merits of the claims, the Court must first determine whether there are any procedural bars to the motion.[13] Defendant's Motion was timely filed within one year of the date of the issuance of the Supreme Court mandate.[14] Pursuant to Super. Ct. Crim. R. 61(i)(3) and (4) though, any ground for relief that was not previously raised is deemed waived, and any claims that were formerly adjudicated, whether in the proceedings leading to the judgment of conviction, in an appeal, in a postconviction proceeding, or in a federal habeas corpus proceeding, are thereafter barred. However, ineffective assistance of counsel claims cannot be raised at any earlier stage in the proceedings and are properly presented by way of a motion for postconviction relief.[15] The fact that counsel did not raise an argument or objection during the trial, or on appeal, does not bar a defendant from alleging that counsel's failure amounted to ineffective assistance.[16]

---

[13] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).

[14] Super. Ct. Crim. R. 61(m)(2) and Super. Ct. Crim. R. 61(i)(1).

[15] *Whittle v. State*, 2016 WL 2585904, at *3 (Del. Apr. 28, 2016); *State v. Evan-Mayes*, 2016 WL 4502303, at *2 (Del. Super. Aug. 25, 2016).

[16] *See Malloy v. State*, 2011 WL 1135107, at *2 (Del. Mar. 28, 2011); *Brodie v. State*, 2011 WL 927673, at *1 (Del. Super. Mar. 17, 2011); *State v. Ross*, 2004 WL 2735515, at *2 (Del. Super. Nov. 22, 2004).

In order to prevail on an ineffective assistance of counsel claim, a defendant must show that his counsel's representation fell below an objective standard of reasonableness **and** the deficiencies in counsel's representation caused the defendant actual prejudice.[17] When reviewing such a claim, the Court must analyze counsel's conduct based upon all of the facts of the case and avoid peering through the lens of hindsight.[18] Defendant must show that any alleged errors were so serious that his counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.[19] "A defense attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities."[20] Great weight and deference are given to tactical decisions by the trial attorney and counsel cannot be deemed ineffective for failing to pursue motions that lack merit.[21] Further, in order to prevail on an ineffective assistance of counsel claim, a defendant must show that but for the errors, there is a reasonable probability that the outcome of the proceedings would have been different.[22]

---

[17] *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984); *Hitchens v. State*, 757 A.2d 1278 (Del. 2000).

[18] *State v. Wright*, 653 A.2d 288, 295 (Del. Super. 1994).

[19] *State v. Finn*, 2012 WL 1980566, at *4 (Del. Super. May 23, 2012).

[20] *Id.*, at *4 (holding defense counsel provided active and capable advocacy when evidence against Defendant was overwhelming) (citing *Harrington v. Richter*, 131 S. Ct. 770, 787-792 (2011)).

[21] *State v. Miller*, 2013 WL 871320, at *4 (Del. Super. Feb. 26, 2013).

[22] *Strickland*, 466 U.S. at 687-88, 694; *Hitchens v. State*, 757 A.2d 1278 (Del. 2000).

In doing so, Defendant must overcome a strong presumption that counsel's conduct was reasonably professional under the circumstances.[23]

## I.   Trial Counsel's Response to Brown's Testimony was Reasonable

Defendant first argues that Trial Counsel was ineffective for failing to object to Brown's testimony or to ask for a mistrial/curative instruction. Brown witnessed the shooting of his brother and while testifying, was emotional. Some of Brown's testimony was incendiary, describing Defendant as "rat", "dog", "girl/boy", "whack" or "snake in grass," whereas other statements condemned Defendant as "guilty," "should have taken a plea," and that he "murdered" his brother.[24]

The trial judge determines the prejudicial effect of an unsolicited response by a witness.[25] When reviewing the issue, the Court will look to "the nature and frequency of the conduct or comments, the likelihood of resulting prejudice, the closeness of the case and the sufficiency of the trial judge's efforts to mitigate any prejudice in determining whether a witness's conduct was so prejudicial as to warrant a mistrial."[26] Defendant

---

[23] *State v. Wright*, 653 A.2d at 293-94 (citations omitted).

[24] *See* Appendix to Motion at pgs. A52-74, 81-113, 116-117.

[25] *Pena v. State*, 856 A.2d 548, 550-51 (Del. 2004), citing *Taylor v. State*, 690 A.2d 933, 935 (Del. 1997).

[26] *Id.*, citing *Griffith v. State*, No. 570,2002, 2003 WL 1987915, at *4 (Del.2003); *Taylor*, 690 A.2d at 935 ("First, the Court examines the nature, persistency, and frequency of the outburst. Second, the Court considers whether the outburst created a likelihood that the jury was misled or prejudiced. Third, the Court examines the closeness of the case. Fourth, the Court considers the trial judge's attempt to mitigate any prejudice.").

does not now argue that the Court erred in denying a mistrial, but rather that Trial Counsel should have challenged the testimony differently.

Defense strategy is not always successful, but that does not mean Trial Counsel was ineffective. The United States Supreme Court has strongly cautioned that the courts must avoid the "distorting effects of hindsight" or grading counsel's performance.[27] Otherwise, a defendant could too easily challenge a particular strategic choice simply because the effort failed to garner the relief sought.[28] Further, there are "countless" ways by which counsel may defend a client, and no two advocates may necessarily see the case the same way. As such, defense counsel has "wide latitude in making tactical decisions" and enjoys a strong presumption that his conduct was the result of sound trial strategy.[29] "Effective representation does not require that the Defendant prevail nor that his counsel doesn't make mistakes."[30] The Court must review all of the circumstances, and after

---

[27] *Ploof v. State*, 75 A.3d 811, 821-825 (Del. 2013), citing *Strickland,* at 689-690, 687.

[28] *State v. Fletcher*, 2015 WL 2438271, at \*5 (Del. Super. May 19, 2015); *State v. Gattis*, 2011 WL 1458484, at \*9 (Del. Super. Mar. 22, 2011) (the court must avoid judging effectiveness of trial strategy simply because the theory advanced was unsuccessful). *See also, State v. Wright*, 1998 WL 734771, at \*8 (Del. Super. Sept. 28, 1998) (finding that although trial counsel's strategy was risky, it was not unreasonable nor ineffective).

[29] *State v. Fletcher*, 2015 WL 2438271, at \*5, citing *Harrington v. Richter*, 131 S.Ct. 770, 788–789 (2011); *Thomas v. Varner*, 428 F.3d 491, 498-500 (3d. 2005) (finding that once it is determined that trial counsel had an informed strategy, there is a strong presumption of effective assistance that is virtually unchallengeable).

[30] *State v. MacDonald*, 2007 WL 1378332, at \*8 (Del. Super. May 21, 2007).

applying a heavy measure of deference to counsel's judgments, determine whether the decisions made were reasonable.[31]

Brown's comments were random and unpredictable. Rather than attempting to object each and every time he was taken by surprise by something said, Trial Counsel's strategy was to make Brown appear irrational. Trial Counsel conducted *voir dire* of Brown outside the presence of the jury. Brown was at the shooting and saw what happened. Trial Counsel's strategy was to discredit him with the jury. Trial Counsel felt Brown's demeanor would limit his credibility with the jury, and Brown was in fact frequently admonished by the judge. Trial Counsel also highlighted during cross-examination that Brown did not come forward until a month after the shooting, and only after he himself was arrested. Trial Counsel emphasized that Brown was high on beer and drugs and his statements were inconsistent. At the conclusion of the case, the trial judge gave the jury an instruction regarding credibility of witnesses and reminded the jurors that they should not be influenced by passion, prejudice or sympathy. For the court to find that a curative instruction is insufficient, the court must also find that the prejudice

---

[31] *Strickland*, at 691.

to defendant was "egregious." [32]   In light of the deference given to Trial Counsel's tactical decisions, and after reviewing Brown's testimony in its entirety, I find that Trial Counsel employed an informed strategy and Defendant has failed to rebut the strong presumption given to counsel, or that he was prejudiced by counsel's actions.

## II.   Trial Counsel Effectively Contested the Replay of the Video

During trial, the State introduced recorded prison phone calls wherein Defendant made statements that were interpreted as encouraging family members to tamper with witnesses, including Harrison.  When Harrison failed to appear at trial, the Court declared him unavailable and the State played a recorded statement during which he told police about a phone conversation he had with Defendant the Sunday morning after the shooting.  During the call, Defendant stated, "Pop, I'm sorry, I didn't mean to do it." After the State rested its case, Harrison appeared and offered to testify for the defense. Harrison denied any efforts to prevent him from testifying and when called to testify, he recanted his prior recorded statement.  On appeal, the Supreme Court held that the trial court properly admitted the phone calls and the recorded statement.[33]  In an effort to

---

[32] *Ashley v. State*, 798 A.2d 1019 (Del. 2002), citing *Bowe v. State*, 514 A.2d 408, 410 (Del.1986); *Ney v. State*, 713 A.2d 932 (Del.1998) (stating that in certain cases "a cautionary instruction is a 'meaningful and practical' alternative obviating the need for a mistrial"); *Weddington v. State*, 545 A.2d 607, 611-15 (Del.1988) (holding that an instruction did not cure the prejudice of an unsupported interjection of race into the case).

[33] *Anderson*, at *1.

evade the bar to formerly adjudicated claims, Defendant instead argues that Trial Counsel was ineffective for failing to object to a replay of the video after a technical glitch.[34]

There is no dispute that Trial Counsel objected to the State's ability to play the videotaped interview and later moved for a mistrial. The State then argued that the video "skipped" at a crucial point and that this may mislead the jury. The State asked to play the tape again. Although Defendant argues that Trial Counsel did not object to the replay, that is not entirely correct. In response to the State's request, Trial Counsel suggested that the State could instead address it during argument to the jury. Despite this, the Court found that there was a "defect in the video" and permitted the replay. Trial Counsel's challenge to the replay of the video was objectively reasonable, and Defendant has failed to demonstrate prejudice resulting from counsel's actions.[35]

## III.    The Reference to AFIS was Not Objectively Unreasonable

On direct examination, Detective Leccia testified that the fingerprint evidence obtained at the scene did not match Defendant. On cross-examination, Trial Counsel explored this further:

> Detective Leccia:   Each fingerprint we would have go into our AFIS, the automated fingerprint identification system. And that's just a database of multiple fingerprints from various sources. And the defendant was also in that database and we did not get a match to the defendant from any of those.

---

[34] To the extent Defendant is arguing that the trial court should not have allowed a replay of the video, this argued is deemed waived for Defendant's failure to present it on appeal.

[35] Of note, the Supreme Court found that Harrison's testimony negated any prejudice to Anderson by the State playing the recorded statement. *Anderson*, at *1.

11

> Defense Counsel: Does that database have the entire universe or just individuals that maybe have been convicted of a crime where there fingerprints were?
>
> Detective Leccia: It's not just subjects that are convicted of crimes, there's other people. It's not everybody, obviously, but its not just criminals.

Defendant argues that the testimony elicited by Trial Counsel created an inference that he had a prior criminal history and was improper character evidence[36] that was extremely prejudicial. I disagree. The questioning highlighted that the database has the "entire universe" of individuals, and stressed that it was not just those convicted of a crime. Trial Counsel attests that the questioning was "clearly strategic." The jury understood that Defendant was incarcerated and his fingerprints would likely be in the database. Prints were recovered from the area of the shooting and Trial Counsel felt that the importance of the jury knowing that Defendant's fingerprints were not at the scene far outweighed any potential inference the jury may have drawn. Trial Counsel did not introduce, nor elicit, testimony indicating Defendant had been previously convicted of a crime or the details of any convictions. In consideration of the great deference and weight given to Trial Counsel's trial strategy, the cross-examination was not objectively unreasonable.

---

[36] *See* Delaware Rule of Evidence 404(b).

12

## IV. Defendant was not entitled to a missing evidence instruction

Finally, Defendant claims that during trial he informed Trial Counsel of a three-way telephone call with Harrison wherein Harrison confirmed that he knew Defendant did not shoot the victim. Defendant urged Trial Counsel to obtain the recording to refute the State's taped statement during which Harrison stated Defendant admitted to shooting the victim. Defendant argues that (1) Trial Counsel erred by failing to request and present the recordings; and (2) Trial Counsel should have requested a missing evidence instruction.[37]

The Motion does not identify the "third" person on the call, the date or time of the call, or any other information to confirm the existence of this purported conversation.[38] There is no indicia of reliability regarding the existence of this call. Regardless, contrary to Defendant's initial assertion, Trial Counsel requested records of any phone conversations, but he did not receive a record of this call.[39] Assuming the call existed, the question is whether Trial Counsel erred by failing to request a missing evidence instruction. Trial Counsel agrees that if Harrison had not testified, then he would have

---

[37] *See Lolly v. State*, 611 A.2d 956 (Del. 1992); *Deberry v. State*, 457 A.2d 744 (Del. 1983).

[38] Other than a vague and self-serving affidavit from Defendant, he did not provide any further confirmation to support his position.

[39] The State produced records of calls from September 23, 2015 – December 2, 2015 and from July 6, 2016 – August 18, 2016, but other records were not preserved.

requested the instruction.[40] However, Trial Counsel also acknowledges that other available phone recordings were presented to the jury to show that Defendant maintained his innocence, and Harrison testified in person and recanted his previous statement.[41] In fact, Harrison testified that Defendant never told him he killed Clark, he was under the influence when he gave his statement to the police, and he attempted to discredit his prior statements as well as Brown's trial testimony. Therefore, if the phone call recording existed, it would not have provided any additional information.

In addition, the State argued that (1) the telephone service vendor for the facility only maintains recordings for one year; (2) the State does not have an obligation to preserve all recordings; and (3) there was no prejudice to Defendant because Harrison testified and recanted his original statement. When analyzing a claim that the State failed to gather and/or preserve potentially exculpatory evidence, the Court considers:

> (i) whether the requested material, if in the possession of the State at the time of the request, would have been subject to disclosure under Superior Court Criminal Rule 16 or under *Brady v. Maryland*; (ii) if so, whether the State had a duty to preserve the material; and (iii) if there was a duty to preserve, whether the State breached that duty and what consequences should flow from that breach. Those consequences are determined in accordance with a three-part test, which considers: "[ (i) ] the degree of negligence or bad faith involved; [ (ii) ] the importance of the missing evidence considering the probative value and reliability of secondary or

---

[40] Aff. at pg. 3.

[41] Aff. at pgs. 2-3.

substitute evidence that remains available; and [ (iii) ] the sufficiency of the other evidence produced at the trial to sustain the conviction."[42]

A defendant is not entitled to a missing evidence instruction unless he can show that the State acted negligently or in bad faith in failing to preserve the evidence, and the missing evidence substantially prejudiced his case.[43]

In the present case, the recording was not in the State's possession at the time of the request, but if it existed, it would have been discoverable under Rule 16 or as *Brady* material. In Defendant's supplemental reply, he relies heavily on Rule 16, which states:

> Upon request of a defendant the state shall disclose to the defendant and make available for inspection, copying, or photographing: any relevant written or recorded statements made by the defendant..., or copies thereof, within the possession, custody, or control of the state, the existence of which is known, or by exercise of due diligence may be come known, to the attorney general...

Defendant encourages the Court to interpret this rule as requiring the State to preserve all phone calls of an incarcerated defendant, regardless of timing or relevance. Rule 16

---

[42] *McCrey v. State*, 2008 WL 187947, at *2 (Del. Jan. 3, 2008), citing *Brady v. Maryland*, 373 U.S. 83 (1963); *Wainer v. State*, 2005 WL 535010, at *2 (Del. 2005); *Hammond v. State*, 569 A.2d 81, 85-87 (Del. 1989); *Lunnon v. State*, 710 A.2d 197, 199-200 (Del. 1998); *Deberry*, 457 A.2d at 750. *See also Bailey v. State*, 521 A.2d 1069, 1090 (Del. 1987) (applying same test to State's duty to gather evidence).

[43] *McCrey v. State*, 2008 WL 187947, at *2 (Del. Jan. 3, 2008), citing *Wainer*, 2005 WL 535010, at *3; *Lunnon*, 710 A.2d at 200-01.

though requires (a) a defendant to make a request; and (b) the State to turnover any recorded statements in its possession.

Trial Counsel was appointed to represent Defendant on December 12, 2016. On May 26, 2017, the State provided Trial Counsel with a call history for the period of September 23, 2015 to December 2, 2015. Soon thereafter, Trial Counsel requested recordings of the calls. The State responded that any recordings from prior to July 5, 2016, no longer existed because they are only maintained for one year. Defendant did not tell Trial Counsel about the Harrison call, until after trial began in July of 2017. After considering the timing of events, Defendant's argument is that although he did not tell Trial Counsel about the call until almost two years after it occurred, and by the time Trial Counsel was appointed, the tape was no longer preserved, the State should have known to preserve *all* calls. Defendant then argues that the State's negligent acts should have prompted Trial Counsel to request a missing evidence instruction.

Defendant has not cited any legal authority compelling the State to gather and preserve all prison phone calls, regardless of standard policy.[44] To place this burden on the State presumes that every phone call is material to the preparation of the defense. Prior to trial, neither the State, nor Trial Counsel, had reason to believe there were telephone recordings that could exculpate Defendant to trigger a duty to gather and

---

[44] The Supreme Court has declined to establish specific procedures for the State to fulfil its duty to gather and preserve evidence. *See Hammond v. State*, 569 A.2d 81, 89 (Del. 1989).

16

preserve.[45] Similar to the circumstances in *Turner v. State*,[46] the recording was not made for the purpose of gathering evidence, there are no allegations of bad faith by the State, Defendant did not timely demand that the calls be preserved, and the facility followed its standard policy of preservation of recordings.[47] As such, I do not find that the State's actions were wrongful.

Moreover, the missing evidence, if it existed, would have been duplicative of evidence presented at trial. To show prejudice, Defendant but demonstrate that he would have prevailed on the merits of the claimed error and if granted, that the missing evidence instruction would have affected the outcome of the proceedings.[48] Defendant presumes that if Trial Counsel had requested a missing evidence instruction, his request would have been granted. In light of the availability of secondary/substitute evidence (Harrison's

---

[45] *McCrey v. State*, 2008 WL 187947, at *2 (Del. Jan. 3, 2008) ("The State had no duty to preserve potentially exculpatory material where the State, in good faith, did not know that such evidence existed"). *See also Schaffer v. State*, 2018 WL 1747793, at *4 (Del. Apr. 10, 2018) (limiting duty to gather to avoid requirement for State to "seek it out."); *Mason v. State*, 2009 WL 189839, at *1 (Del. Jan. 5, 2009) ("the duty to preserve exculpatory evidence does not include a duty to seek out exculpatory evidence"); *DeLoach v. State*, 2012 WL 2948188, at *4 (Del. Super. July 16, 2012) (finding State had no duty to video record all driving under influence investigations); *Turner v. State*, 2006 WL 453247 (Del. Feb. 24, 2006) (holding defendant was not entitled to *Deberry* instruction when video was destroyed pursuant to administrative policy).

[46] 2006 WL 453247 (Del. Feb. 24, 2006).

[47] *See also California v. Trombetta*, 467 U.S. 479, 488-89 (1984) (applying three part test and limiting duty to preserve if the evidence is expected to play significant role in defense, the exculpatory value was apparent before it was destroyed, and defendant was unable to reasonably obtain comparable evidence).

[48] *Thomas v. Varner*, 428 F.3d at 502.

live testimony) though, Defendant has failed to show that if Trial Counsel had requested the instruction, there is a substantial likelihood that the Court would have granted such a request. Defendant cannot support a claim that Trial Counsel was objectively unreasonable for failing to request the instruction or that if he had, that it would have affected the outcome of the proceedings.[49]

For all of the foregoing reasons, Defendant's Motion for Postconviction Relief should be DENIED.

**IT IS SO RECOMMENDED.**

_____
Commissioner Katharine L. Mayer

cc:     Prothonotary
        Brian L. Arban, Esquire
        Michael W. Modica, Esquire
        Anthony A. Figliola, Jr., Esquire

---

[49] _See State v. Perkins_, 2008 WL 2406231, at *3 (Del. Super. June 11, 2008).