# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,         )
                                     )
       Plaintiff,           )
      v.                       )
                                     )
HAKIEM ANDERSON,       )     Cr. ID. No. 1508015476 A & B
                                   )
      Defendant.        )

Submitted: November 24, 2020
Decided: January 21, 2021

Upon Defendant's Amended Motion for Reconsideration of Commissioner's Order

## DENIED

and

Upon Commissioner's Report and Recommendation
That Defendant's Motion for Postconviction Relief
Should Be Denied

## ADOPTED

## <u>ORDER</u>

This 19th day of January, 2021, the Court has considered Defendant's Motion

for Postconviction Relief (the "Rule 61 Motion"), the State's Response to

Defendant's Rule 61 Motion, the Commissioner's Report and Recommendation,

Defendant's Amended Motion for Reconsideration of Commissioner's Order (the

"Motion for Reconsideration"), the State's Response to Defendant's Motion for

Reconsideration, and the relevant proceedings below. For the reasons set forth in this Order, Defendant's Motion for Reconsideration is **DENIED**. The Commissioner's Report and Recommendation dated October 19, 2020 is **ADOPTED**.

## *BACKGROUND*

On August 15, 2015, Defendant got into an argument with Markevis Clark ("Clark").[1] Defendant left following the argument, but returned later the same night and shot Clark in the head.[2] There were three witnesses to the shooting— Keisha Waters ("Waters"), Theresa Brooks ("Brooks"), and Joseph Brown ("Brown").[3] Additionally, Clark's biological father, Arto Harrison ("Harrison"), gave a recorded statement to the police implicating Defendant in the shooting.[4] Defendant was arrested and charged with Clark's murder.

During Defendant's trial, Brown testified for the State.[5] His testimony was erratic and included non-responsive personal opinions.[6] Additionally, when Harrison failed to appear as scheduled to testify, the State moved to introduce into evidence Harrison's recorded statement.[7] The Court granted the State's request.[8]

---

[1] Comm'r Report of Oct. 19, 2020 at 2-3.
[2] *Id.*
[3] *Id.*
[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] *Id.*

After the State rested its case in chief, Harrison appeared and testified on Defendant's behalf.[9]

On December 8, 2017, a jury found Defendant guilty of Murder in the First Degree and Possession of a Firearm During the Commission of a Felony.[10] Defendant appealed his conviction.[11] On November 20, 2018, the Supreme Court affirmed Defendant's conviction.[12]

On February 21, 2019, Defendant filed timely *pro se* Motions for Postconviction Relief and Appointment of Counsel.[13] The Court granted Defendant's Motion for Appointment of Counsel.[14] On November 14, 2019, Defendant's Postconviction Counsel filed a timely Rule 61 Motion for Postconviction Relief.[15] The Rule 61 Motion was assigned to a Superior Court Commissioner pursuant to 10 *Del. C.* § 512(b) and Superior Court Criminal Procedure Rule 62(a)(5).

In the Rule 61 Motion, Defendant argued that his Trial Counsel was ineffective based on five grounds. First, Trial Counsel failed to object to Brown's

---

[9] *Id.*
[10] D.I. 53. Defendant was additionally charged with Possession of a Firearm by a Person Prohibited. Defendant requested that charge be severed from the other charges. The Court granted that request. Defendant was convicted of this charge in a bench trial. None of his ineffective assistance arguments relate to the bench trial.
[11] Comm'r Report at 3.
[12] D.I. 66; *Anderson v. State*, 2018 WL 6068736, at *2 (Del.).
[13] D.I. 67.
[14] D.I. 71.
[15] D.I. 77, 78.

testimony or ask for a curative instruction. Second, Trial Counsel failed to object to a replay of the video recording of Harrison's statement to the police. Third, Trial Counsel improperly elicited testimony which created an inference that Defendant had a prior criminal history. Fourth, Trial Counsel failed to obtain recordings of favorable phone conversations. Fifth, Trial Counsel failed to request a missing evidence instruction regarding an allegedly exculpatory telephone conversation. After analyzing each of Defendant's arguments, the Commissioner found that Defendant was unable to meet his burden for showing that Trial Counsel was ineffective.[16] The Commissioner recommended that the Rule 61 Motion be denied.[17]

In response to the Commissioner's Report, Defendant filed a Motion for Reconsideration on October 29, 2020. In his Motion for Reconsideration, Defendant argues that "the Commissioner's order was based upon findings of fact that are clearly erroneous, or are contrary to law, or the result of an abuse of discretion."[18] Each of Defendant's specific objections are discussed in turn below.

The State filed a Response to Defendant's Motion for Reconsideration on November 13, 2020. In its Response, the State argues that "[t]his Court should deny [Defendant's Motion for Reconsideration] because he only 'restate[s] the

---

[16] Comm'r Report at 10-12, 18.
[17] Id.
[18] Defendant's Amended Motion for Reconsideration of Commissioner's Order at 1.

4

grounds for relief set forth in his initial motion,' the 'Commissioner correctly applied the appropriate legal standard to [Defendant's] claims of ineffective assistance of counsel,' and the Commissioner 'correctly developed a factual record from which to evaluate those claims.'"[19]

## *STANDARD OF REVIEW*

### *Review of the Commissioner's Report*

Under Delaware Superior Court Criminal Rule 62(a)(5), Commissioners are granted the authority to consider postconviction relief hearings. After analyzing a defendant's Rule 61 Motion for Postconviction Relief, a Commissioner will "submit to a judge of the Court proposed findings of fact and recommendations for the disposition, by a judge, of [the motion]."[20] "A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which an objection is made. A judge may accept, reject, or modify, in whole or in part, the findings of fact or recommendations made by the Commissioner."[21]

---

[19] State's Response to Defendant's Objections to the Commissioner's Report and Recommendation at 4 (quoting *State v. Rollins*, 2010 WL 424447, at *1 (Del. Super.)).
[20] Super. Ct. Crim. R. 62(a)(5).
[21] *Id*. at 62(a)(5)(iv).

### *Ineffective Assistance of Counsel*

In order to succeed on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance was deficient, *i.e.*, that it fell below "an objective standard of reasonableness," and that counsel's deficient performance prejudiced the defendant.[22]  In other words, a defendant must show that "but for counsel's unprofessional errors, the result of the proceeding would have been different."[23]  Counsel "may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities."[24]  Finally, a reviewing court must be careful to consider counsel's actions based on the information available at the time and "avoid peering through the lens of hindsight."[25]

## *ANALYSIS*

### *Trial Counsel's Decisions Regarding Brown's Testimony were Reasonable*

During the State's case in chief, Brown testified as a witness to the shooting. While testifying, Brown became emotional and made incendiary comments, such as calling Defendant a "snake in the grass" and "guilty."[26]  Defendant argued in his Rule 61 Motion that Trial Counsel was ineffective for not objecting to

---

[22] *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).
[23] *Id*. at 694.
[24] *State v. Finn*, 2012 WL 1980566, at *4 (Del. Super.) (citing *Harrington v. Richter*, 562 U.S. 86, 102-110 (2011)).
[25] *State v. Wright*, 653 A.2d 288, 295 (Del. Super. 1994).
[26] Comm'r Report at 7.

inflammatory portions of Brown's testimony or asking for a mistrial or curative instruction. The Commissioner found that "Brown's comments were random and unpredictable."[27] The Commissioner further found that Counsel's choice to not object to Brown's testimony, and instead let him appear irrational before the jury, was an "informed strategy."[28]

Defendant argues in his Motion for Reconsideration that "[t]he Commissioner's determination is clearly erroneous because it reflected a minimization of the impact of the egregious, entirely objectionable comments made by Brown."[29] Defendant further argues that "excusing [Trial Counsel's] negligence by accepting that his strategy to make Brown appear 'irrational' was reasonable is clearly erroneous" because "[g]iving a witness a green light to make repeated denigrating and incriminating comments about the Defendant is not a reasonable strategy."[30] The State argues in response that the Commissioner's conclusion was reasonable and supported by the record.[31]

The United States Supreme Court has repeatedly cautioned against second guessing decisions made during a trial. "Because advocacy is an art and not a science, and because the adversary system requires deference to counsel's informed

---

[27] *Id*. at 9.
[28] *Id*. at 10.
[29] Mot. for Recons. at 2-3.
[30] *Id*. at 3.
[31] Resp. at 6-7.

decisions, strategic choices must be respected . . . if they are based on professional judgment."[32] Further, "[r]are are the situations in which the 'wide latitude counsel must have in making tactical decisions' will be limited to any one technique or approach."[33] As the Commissioner stated, "[d]efense strategy is not always successful, but that does not mean Trial Counsel was ineffective."[34]

In his affidavit, Trial Counsel stated that he "believed prior to cross that Brown's demeanor was such that it would limit his credibility."[35] He pointed out during cross that "some if not all of [Brown's] testimony was contrary to the other witnesses" and that there were discrepancies between Brown's statement to the police and his testimony.[36] Trial Counsel established on cross that "Brown did not come forward with his information until a period of one month from the homicide and only after being placed under arrest."[37] He also established that Brown was "high on drugs and beer" at the time of shooting.[38]

While some of Brown's testimony was objectionable, it is clear that Trial Counsel had a considered plan for discrediting Brown before the jury. Not objecting to Brown's statements was part of that plan. Trial Counsel believed that

---

[32] *Strickland*, 466 U.S. at 681 (internal citation omitted).
[33] *Harrington*, 562 U.S. at 106 (internal citation omitted).
[34] Comm'r Report at 8.
[35] Appendix to State's Response at D39.
[36] *Id*.
[37] *Id*.
[38] *Id*.

Brown's emotional statements, coupled with what was established on cross-examination, would make the jury disregard his testimony. While Trial Counsel's strategy was ultimately unsuccessful, the Court finds that the strategy was part of an informed decision based on professional judgment. Therefore, Defendant's first argument fails.

### *Trial Counsel Reasonably Challenged Replaying Harrison's Statement*

When Harrison failed to appear during the State's case in chief, the State sought to enter a recording of Harrison's statement to the police into evidence.[39] Trial Counsel objected but was overruled.[40] The recording was then entered into evidence and played for the jury.[41] When the State played the recording, there was a technical difficulty which caused the video to skip.[42] The State argued that the video glitch occurred at a crucial point and could mislead the jury.[43] When the State requested that the recording be replayed, Trial Counsel suggested that the State should instead address the glitch with the jury during its argument.[44] Ultimately, the Court allowed the State to replay the video.[45]

---

[39] *Id*. at D30.
[40] *Id*. at D30-31.
[41] *Id*. at D32. The Court notes that Defendant challenged the admission of the recording in his appeal but the Supreme Court found that the recording was properly admitted. *Anderson*, 2018 WL 6068736, at *1.
[42] App. at D34.
[43] *Id*.
[44] *Id*.
[45] *Id*.

Defendant argued in his Rule 61 Motion that Trial Counsel was ineffective by failing to object to the replay. The Commissioner found that: (1) "Trial Counsel's challenge to the replay of the video was objectively reasonable" and (2) "Defendant [] failed to demonstrate prejudice resulting from counsel's actions."[46]

In his Motion for Reconsideration, Defendant argues that "[t]he video replay likely had an improper influence on the jury" and "[e]ven though defense counsel objected to the initial presentation of the video, he had a duty to renew his objection to the request to replay the video."[47]  Defendant further argues that "[t]he Commissioner erred by determining that counsel's challenge to the replay of the video was objectively reasonable when, in fact, no objection was made."[48]  The State argues in response that "Trial Counsel's performance was objectively reasonable because he did oppose the statement's admission and replay, and the trial judge heard his arguments."[49]

It is undisputed that Trial Counsel did not specifically object to the recording being replayed.  "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom."[50]  Suggesting that the State address the

---

[46] Comm'r Report at 11.
[47] Mot. for Recons. at 4.
[48] *Id.*
[49] Resp. at 8.
[50] *Harrington*, 562 U.S. at 105.

technical difficulty with the jury instead of replaying the video, after objecting to

the initial admission of the tape and being overruled, was a reasonable response.

Trial Counsel's failure to formally repeat the objection does not make his actions

objectively unreasonable and certainly does not rise to the level of incompetence.

Even if Trial Counsel's actions had been deficient, Defendant still has not

shown prejudice.  On appeal from his conviction, the Supreme Court found that

Harrison's in-person testimony on Defendant's behalf—in which he recanted his

statement to the police—negated any prejudice that resulted from the recording.[51]

Defendant argues that "the bolstering effect of replaying [the] video statement had

a pervasive effect on the outcome."[52]  The Court disagrees.

Technical difficulties are inevitable.  Allowing the State to replay the

recording after it malfunctioned did not "bolster" the effects of the statement, it

simply allowed the State to properly show the statement to the jury.  Trial

Counsel's actions were not unreasonable, and Defendant has failed to show that

replaying the video prejudiced him.  Therefore, Defendant's second argument fails.

### *Trial Counsel's Cross-Examination of Detective Leccia was Not Unreasonable*

During the State's case-in-chief, Detective Leccia, who was involved in the

investigation, testified that none of the fingerprints found at the scene of the

---

[51] *Anderson*, 2018 WL 6068736, at *1.
[52] Mot. for Recons. at 3.

shooting matched the Defendant.[53]  On cross-examination, Trial Counsel elicited testimony from Detective Leccia about how the fingerprints were analyzed.[54] Detective Leccia testified that fingerprints obtained at the scene of the shooting were entered into an automated fingerprint identification system (the "AFIS").[55] He further testified that Defendant's fingerprints were in the AFIS but did not match any found at the scene.[56]  Trial Counsel asked Detective Leccia if the AFIS included "the entire universe or just individuals that maybe have been convicted of a crime where there fingerprints were."[57]  Detective Leccia responded that the AFIS did not cover "everybody, obviously, but not just criminals."[58]

Defendant argued in his Rule 61 Motion that this line of questioning by Trial Counsel created an inference that he had a prior criminal history.  Defendant further argued that such an inference was prejudicial and constituted improper character evidence under Delaware Rule of Evidence 404(b).  Trial Counsel stated in an affidavit that his questions were "clearly strategic."[59]  Trial Counsel felt that the jury knowing Defendant's fingerprints were not found at the scene was so important that it outweighed the potential of adverse inferences.[60]

---

[53] App. at D28.
[54] *Id*. at D28-29.
[55] *Id*. at D29.
[56] *Id*.
[57] *Id*.
[58] *Id*.
[59] *Id*.
[60] *Id*.

After considering the issue, the Commissioner found that Trial Counsel's strategy was not objectively unreasonable.[61] Defendant argues in his Motion for Reconsideration that this finding was erroneous because: (1) "Trial Counsel needlessly elicited testimony that the jury could use to infer that Defendant had a prior history"; and (2) "[p]roof that the prints at the scene did not match the Defendant could have been accomplished without disclosing that Defendant's prints were in the [AFIS]."[62] Defendant takes issue with one statement in particular and argues that "[t]he Commissioner's claim that the Defendant was 'incarcerated and his fingerprints would likely be in the database' was not supported by facts as there is no indication that the AFIS database was searched after Defendant had been arrested."[63] The State responds that the Commissioner's determination is "supported by competent evidence."[64]

The Court notes that Defendant is taking the Commissioner's statement out of context. The Commissioner stated that at the time of Detective Leccia's testimony "[t]he jury understood that Defendant was incarcerated and his fingerprints would likely be in the database."[65] It is irrelevant whether the AFIS was searched before or after Defendant's arrest. What is important is that at the

---

[61] Comm'r Report at 12.
[62] Mot. for Recons. at 6.
[63] *Id.*
[64] Resp. at 11.
[65] Comm'r Report at 12.

time the jury heard any discussion of the AFIS, it was obvious that Defendant had been arrested at a prior point in time. A juror would have likely assumed that Defendant's fingerprints were entered into the AFIS at some point before going to trial.

Trial Counsel's questions certainly led to an inference that Defendant's fingerprints were contained in the AFIS at the time of the trial. However, neither Detective Leccia nor Trial Counsel made any statements that would lead a juror to infer that his fingerprints were *already* in the system prior to his arrest for shooting Clark.[66] Therefore, the mere fact that Defendant's fingerprints were in the AFIS, with no further details about when precisely they were entered into the system, would most likely not have had the prejudicial effect that Defendant argues it did.

While it is possible that Trial Counsel could have stopped after simply confirming that none of the fingerprints found at the scene matched the Defendant,[67] it is not the role of the Commissioner or this Court to view Trial Counsel's actions against every alternative action he could have taken. In any trial, counsel is faced with dozens of strategic decisions, many of which must be made

---

[66] *See* App. at D28-29.
[67] During direct examination, the State asked Detective Leccia: "Did any [fingerprint] matches come back to the defendant?" Detective Leccia answered: "No." During cross-examination, Trial Counsel stated to Detective Leccia: "You indicated that there were no fingerprint matchings to the defendant." Detective Leccia replied: "Correct." Trial Counsel then continued questioning Detective Leccia. App. at D28-29.

on the spot, and those decisions are given great deference.[68] In light of this level of

deference, the Court finds that Trial Counsel's line of questioning was not

objectively unreasonable. Therefore, Defendant's third argument fails.

### *Trial Counsel Did Not Err by Failing to Request a Missing Evidence Instruction*

Defendant's fourth and fifth arguments will be addressed together.

Defendant argued in his Rule 61 Motion that he told Trial Counsel about a three-

way telephone conversation "in which Harrison confirmed he knew [Defendant]

did not shoot the victim."[69] Defendant alleged that "Trial Counsel did not follow

up and obtain the recordings of [his] phone calls."[70] In his affidavit, Trial Counsel

states that he requested all phone records but there was no recording of the alleged

phone call available.[71]

The Commissioner examined the record and concluded that: (1) "[t]here is

no indicia of reliability regarding the existence of the call"[72]; (2) contrary to

Defendant's assertion, Trial Counsel did attempt to obtain recordings of all of

Defendant's phone conversations[73]; (3) the State had no duty to preserve all of

---

[68] *See Strickland*, 466 U.S. at 681 (internal citation omitted); *Harrington*, 562 U.S. at 106 (internal citation omitted).
[69] App. at D35.
[70] *Id.*
[71] App. at D42.
[72] Comm'r Report at 13.
[73] *Id.*

Defendant's phone calls[74]; and (4) the conversation, "if it existed, would have been duplicative of evidence presented at trial."[75] Therefore, the Commissioner concluded that Trial Counsel's actions were reasonable and did not prejudice Defendant.[76] In his Motion for Reconsideration, Defendant makes point-by-point objections to each of these findings.[77]

The Court agrees that Defendant has not provided any information about the call that would confirm its existence. Merely stating in an affidavit that the alleged call took place is insufficient in this context. Even if the alleged conversation did in fact occur, Trial Counsel's actions in trying to obtain a recording of it were reasonable and sufficient. He requested recordings of all of Defendant's phone calls and there was nothing else that he could have done to procure a copy. This is especially true given the fact that Defendant waited until trial to tell Trial Counsel about the existence of the call.

Defendant's second claim—that Trial Counsel was ineffective for failing to request a missing evidence instruction—fails because the Court finds that Trial Counsel's actions were reasonable. "Where 'the State does not act negligently or in bad faith in failing to preserve evidence, and the missing evidence does not

---

[74] *Id*. at 15-17.
[75] *Id*. at 17.
[76] *Id*.
[77] Mot. for Recons. at 6-12.

16

substantially prejudice the defendant's case,' a missing evidence instruction is not necessary."[78] Here, the State did not act negligently in failing to preserve *every* recording of *every* phone call made by Defendant. It is the standard practice of the State's vendor to delete recordings after one year. Under the vendor's policy, the recording of the alleged phone call, if it existed, would have been deleted prior to the trial. The State did not have a duty to preserve the phone call, thus there was no negligence or bad faith involved in the deletion of the recording.

Further, the alleged missing evidence did not prejudice Defendant's case. Harrison himself testified for Defendant and recanted his statement to the police. Because he told the jury in-person that Defendant did not shoot the victim, the need for a recording of Harrison stating the same thing was minimized. Defendant was not entitled to a missing evidence instruction and Trial Counsel was not ineffective by failing to request one. Therefore, Defendant's final arguments fail.

## CONCLUSION

After a careful *de novo* review of the record in this action, the Court finds that Trial Counsel's performance was not objectively unreasonable and did not cause Defendant prejudice. The Commissioner's Report and Recommendation dated October 19, 2020 is **ADOPTED** in its entirety. Defendant's Motion for

---

[78] *McCrey v. State*, 2008 WL 187947, at *2 (Del.) (quoting *Wainer v. State*, 2005 WL 535010, at *3 n.14 (Del.)).

Postconviction Relief is hereby **DENIED.**   Defendant's Amended Motion for Reconsideration of Commissioner's Order is also **DENIED**.

   **IT IS SO ORDERED.**


                              */s/ Mary M. Johnston*
                              The Honorable Mary M. Johnston